## Case No. 18,160.

### YOUNG v. LIPPMAN et al.

[9 Blatchf. 277; 5 Fish. Pat. Cas. 230; 2 O.-G. 249, 342.] [1]

Circuit Court. S. D. New York. Jan. 2, and March 29, 1872.

INFRINGEMENT OF PATENT—HOOP SKIRTS—APPLICATION FOR INJUNCTION—EFFECT OF AFFIDAVITS.

1. The claim of the letters patent granted to Thomas B. De Forest and Thomas S. Gilbert, February 18th, 1868, for an "improvement in springs for hoop-skirts," namely, "a skirt-hoop, formed by enclosing one or more wires within a covering, which not only envelopes and protects the wire, but forms an edge, A, or connection, B, substantially as and for the purposes specified," is a claim to such a skirt-hoop as is described, as an article of manufacture—a skirt-hoop capable of use in making what is known as a hoop-skirt.

2. The invention in the patent is limited to a skirt-wire made by folding the fabric over one or more wires, and securing it by sizing or glue and pressure, so as to thus enclose the wire or wires in a covering, and leave an edge of the fabric on the one wire, or a connection, formed by the fabric, between the two wires, so as to admit of attaching the skirt-wire to vertical tapes, in making a hoop-skirt.

3. The securing the fabric by gluing it, or using other equivalent adhesive substance, in contradistinction to securing the fabric, to form the enclosure, by weaving around the wires, or weaving pockets, in which to insert the wires, being cheaper, and an improvement in the trade, and useful, is, if new, patentable, the resulting fabric being a different article from one formed by weaving.

4. An article of dress, called a "bustle," containing wire hoops, each of which is a skirt-hoop, formed by enclosing, by means of glue or sizing and pressure, two wires within a covering, which not only envelopes and protects the wires, but forms a connection between them, so that, while the wires are confined to their proper places within the covering, the wire hoop or spring has the appearance of being made from a much broader wire than it in reality is, and may be secured to the vertical tape by means of a metallic fastening passing through the vertical tape and the material covering the spring, is, substantially, a hoop-skirt, of a diminished size, and the making and selling of such bustles is an infringement of said patent.

5. The ownership of a right to manufacture covered wire for springs for skirts, under a patent granted to John T. Loft, March 13th, 1860, for an "improved machine for covering the springs of skeleton skirts," confers no right, as against the De Forest and Gilbert patent, to make, under the Loft patent, the covered wire contained in such bustle.

6. Although such covered wire may be made by means of the machinery described in the Loft patent, no such wire or skirt-hoop is described or shown in the Loft patent, nor is the apparatus of that patent one which necessarily produces nothing else but such wire or skirt-hoop.

7. In opposition to a motion for an injunction, a general allegation, by affidavit, on information and belief, that the thing patented existed before, without disclosing the particulars of the information leading to the belief, is insufficient.

[1] [Reported by Hon. Samuel Blatchford, District Judge, and by Samuel S. Fisher, Esq., and here compiled and reprinted by permission. The syllabus and opinion are from 9 Blatchf. 277, and the statement is from 5 Fish. Pat. Cas. 230.]

8. The fact that the plaintiff is infringing the Loft patent, by using the Loft apparatus to make skirt-hoops, is no ground for refusing an injunction against the defendant, restraining him from infringing the plaintiff's patent.

9. A separate affidavit, by the plaintiff, of his belief that the patentees were the original and first inventors of the thing patented, dispensed with, the bill having in it such an averment, and having been sworn to eleven days before it was filed and notice of application, on it, for the injunction, was given.

[Cited in Consolidated Brake-Shoe Co. v. Detroit Steel & Spring Co., 47 Fed. 895.]

10. A provisional injunction was dissolved, on evidence showing the prior existence, in the United States, of the skirt-wire of the patent, specimens of the thing known before being produced.

[This was a bill in equity by Alexander K. Young against Philip Lippman and Clara Seligman.

[Motion for provisional injunction. Suit brought upon letters patent No. 74,672 for an "improvement in springs for hoop-skirts," granted to Thomas B. De Forest and Thomas S. Gilbert, February 18, 1868, and assigned to complainant.

[The nature of the invention is sufficiently stated in the opinion, and is further illustrated in the accompanying engraving, in which

the black portions of the two side figures represent the flat wire, and the shaded portions the folded fabric. These views are greatly enlarged, the middle figure representing two of the complete springs applied to a portion of one of the tapes.] [2]

Edward N. Dickerson, for plaintiff.
John B. Staples, for defendants.

BLATCHFORD, District Judge. This is a motion for a provisional injunction, founded on letters patent granted February 18th, 1868, to Thomas B. De Forest and Thomas S. Gilbert, for an "improvement in springs for hoop-skirts," and now owned by the plaintiff. The specification states that the inventors have invented "a new improvement in the manufacture of hoop-skirts." There are three figures of drawings annexed to the specification. Figure 1 is a front view of one of the vertical tapes, with three springs attached. Figure 2 is a section of one of the springs, enlarged. Figure 3 is a like section, of a different construction. The specification says: "This invention relates to an improvement in the manufacture of

springs attached to vertical tapes, and well known as hoop-skirts, the object being to produce a lighter and cheaper skirt than has heretofore been done; and the invention consists in enclosing one or more flat elastic wires in a covering, the said covering being, when sized, folded and pressed, of greater width than the spring, so that, while it confines the spring to its proper position within the covering, it gives to the spring the appearance of being made from a much broader wire than it in reality is, and admits of securing the spring to the vertical tape by means of a metallic fastening passing through both the vertical tape and the material covering the spring. * * * In Fig. 2, we represent the spring as two flat wires enclosed within the same covering, the wires being denoted in black. Various devices may be employed in covering the two wires. One, and, we think, practically, the best, is to take a narrow strip of fabric, sufficient in width to surround the two wires, and form the space between the two. Then, the two wires, with the fabric, are drawn through an apparatus prepared for the purpose, the fabric being sized with any adhesive material, and the wires sustained equidistant from each other, the apparatus folding the fabric over the wires, and pressing it down into the space between, the sizing being sufficient, or, other sizing being added, so that, when thoroughly dried, the wires will be sustained at their given distances from each other, one wire at each edge of the folded fabric. The wires may be very light, and the fabric equally light, and, when completed, the article has the appearance of a broad spring. Instead of the two springs, as seen in Fig. 2, a single spring may be inserted, as in Fig. 3, and the fabric guided and folded so as to leave an edge, A, of fabric upon the spring, as denoted in said Fig. 3. This folded edge, being sized and pressed, secures the wire in its position in like manner as first described, and gives the like appearance of a broad spring, the sizing in all cases being sufficient to sustain that portion of the fabric at the edge of the wire, or between the wires; or, if preferred, and to give more material at the edge, a single spring may be inserted at one edge, and a cord at the other edge. To construct a skirt from springs thus formed, pass the springs, B, through the pocket in the vertical tape, C, in the usual manner, then insert an eyelet, or other suitable metallic fastening, through the vertical tape, and through the fabric of the covering of the spring, as denoted in Fig. 1, and this may be done on the former, and the same means which secure the springs in the vertical tape may also lock the two ends of the spring within the pocket of the tape. A skirt constructed in this manner has every appearance of a strong spring, but is much lighter than the ordinary skirts, as the wire employed for the spring may be much lighter than that

used in the ordinary manner, and the manner of attaching the parts together is of the strongest possible character. Other wires may be added, to increase the width, but forming a space in like manner between each two. We do not wish to be understood as broadly claiming the introduction of two or more springs into a fabric, as such is not new; but, in cases when it has been done, the fabric has been first formed into pockets for the reception of the springs, and the springs themselves covered separately and independent of the said pockets. This arrangement is seen in several well-known patents for the whole or lower portions of a skirt. It will be observed, that we do not in any way form a pocket in the fabric, the covering being simply a folded fabric, the folds being secured by strong sizing and pressed hard together." The claim is in these words: "A skirt-hoop, formed by enclosing one or more wires within a covering, which not only envelopes and protects the wire, but forms an edge, A, or connection, B, substantially as and for the purposes specified."

The allegation of infringement, in the bill, is, that the defendants are making and selling springs for hoop-skirts, precisely the same as those described in the plaintiff's patent. The evidence of infringement is, that the defendants have sold an article of dress called a "bustle," containing hoop-skirt wire made substantially in the manner described in the patent, and that the defendant Lippman has been vending such hoop-skirt wire. The making and selling of the bustle is not denied, and a specimen is produced, which contains wire hoops made in the manner described in the patent. Each hoop, in fact, is a skirt-hoop, formed by enclosing, by means of glue or sizing and pressure, two wires within a covering, which not only envelopes and protects the wires, but forms a connection between them, substantially as and for the purposes set forth in the specification of the plaintiff's patent.

There can be no doubt that the claim of the patent is for such a skirt-hoop as is described, as an article of manufacture—a skirt-hoop capable of use in making what is known as a hoop-skirt. The bustle referred to is substantially a hoop-skirt, of a diminished size.

The defendants set up, in defence, that the defendant Lippman is the owner of the right to manufacture covered wire for springs for skirts, under letters patent granted to John T. Loft, March 13th, 1860, for an "improved machine for covering the springs of skeleton skirts," and that he is making, under that patent, covered wire such as is contained in the bustle referred to. The specification of the Loft patent describes a machine for covering, in a continuous manner, the springs for hoop-skirts with any textile or other suitable fabric, the invention consisting in the use of glue or cement, distributing rollers, cutters, guides, folders, and drawing and pressure rollers, substantially as described in such specification, whereby the desired end is attained. The machine is intended to take the place of machines for weaving or braiding the covering around the wires of which the hoops are made. It describes and claims the covering of wires or springs for hoop-skirts, by passing the same, in connection with strips or covers of suitable fabric, having a suitable glue, cement or adhesive substance applied to them, through folders and between drawing and pressure rollers, arranged to operate substantially as and for the purpose set forth. There is no description or representation of any such skirt-hoop as the plaintiff's. The only wire or skirt-hoop shown or described is one in which the fabric merely encloses or covers the wire, so as to envelop and protect it, and does not, as in the plaintiff's hoop, also form an edge to a single wire, or a connection between two wires, for the purpose shown in the plaintiff's specification. There is no suggestion, in the Loft specification, of the construction of such an article as the plaintiff's skirt-hoop. It may very well be, that the Loft machine is capable, either with or without modification, of being used to manufacture the plaintiff's skirt-hoop. The specification of the plaintiff's patent speaks of making his skirt-hoop by drawing it through a proper apparatus; but the mere fact of the prior existence of such apparatus shows no want of novelty in the invention covered by such patent. The novelty of such invention would not have been affected even if the plaintiff's patent had stated that the new skirt-hoop was to be made by the use of the Loft apparatus. Such apparatus is not one which necessarily produces nothing else but the plaintiff's skirt-hoop. This is shown by the fact that, as described and represented in the Loft patent, it does not produce the plaintiff's skirt-hoop, or anything having its characteristics.

The defendant Lippman, in an affidavit, states, that he is informed and believes, that, long before the date of the plaintiff's patent, and before the alleged invention of De Forest and Gilbert, covered wire, with spaces of the covering fabric between or on the outside of the wire, was known and used publicly for various purposes, and was an article well known and used and sold. This general allegation, on information and belief, amounts to nothing. If the defendant has any information to the effect stated, sufficient to warrant a belief in the truth of what is stated, he is bound to disclose it for the judgment of the court if it is to be of any avail to him. He cannot swear to the conclusion and withhold the particulars of the information.

The fact that the plaintiff does not or cannot make his hoop without using the apparatus covered by the Loft patent, as is urged, cannot affect the questions involved in this motion. It may be that the plaintiff is infringing the Loft patent, while the defendants are infringing the plaintiff's patent, and

that neither can make the plaintiff's hoop without using what is covered by both of the patents. But the case of each must be treated separately, on its merits, when presented.

It is objected, that the application for the injunction is not accompanied by an affidavit of the plaintiff, that he believes that De Forest and Gilbert were the original and first inventors of the thing patented. The bill, however, which was sworn to on the 13th of November, 1871, and filed on the 24th of November, avers that De Forest and Gilbert were the first and original inventors of the improvement for which the patent was issued. On the filing of the bill, notice of the application, founded on the bill, for the injunction, was given for the 2d of December. Under such circumstances, no separate affidavit is necessary. Sullivan v. Redfield [Case No. 13,597].

An injunction must be granted, as prayed for in the bill.

After the granting of the injunction, in January, 1872, a motion was made, in March, 1872, to dissolve it, on matters not presented on the original motion.

BLATCHFORD, District Judge. I do not regard anything adduced by the defendants against the novelty of the invention covered by the plaintiff's patent, as of any importance, except the skirt wires brought from England by Marcus Berliner, in 1865. The invention in the patent is limited to a skirt wire made by folding the fabric over one or more wires, and securing it by sizing or glue and pressure, so as to thus enclose the wire or wires in a covering, and leave an edge of the fabric on the one wire, or a connection formed by the fabric between two wires, so as to admit of attaching the skirt wire to vertical tapes, in making a hoop skirt. This securing the fabric by gluing it, or using other equivalent adhesive substance, is in contradistinction to securing the fabric, to form the enclosure, by weaving around the wires, or weaving pockets, in which to insert the wires. It is in evidence, that the manufacture by folding and gluing is cheaper than that by weaving. It is an improvement in the trade, and useful, and, if new, patentable. The resulting fabric is a different article from one formed by weaving.

The article brought from England by Berliner in 1865, if his affidavit is true, and not a fabrication, and if the specimens which he produces, as the identical articles he brought from England in 1865, are not fabricated for this occasion, is the same thing as the skirt wire of the patent, made of a folded fabric, glued and pressed, over two or more wires, and with the connection of fabric between two wires. If his affidavit and these specimens had been presented on the original motion for injunction, I should not have deemed it proper to grant the injunction; and I think they must now avail to throw such doubt over the

question of the novelty of the invention, as to entitle the defendants to have the injunction dissolved, leaving it to the plaintiff to proceed to proofs for final hearing.