ROBINS CONVEYING BELT CO. v. AMERICAN ROAD MACH. CO.

(Circuit Court of Appeals, Third Circuit. June 6, 1906.)

No. 14.

1. PATENTS—CONSTRUCTION OF CLAIMS—REFERENCE TO SPECIFICATION AND DRAWINGS.

Where the meaning of the language used in the claims of a patent is doubtful, or it is susceptible of two different constructions, the specification and drawings may properly be referred to for the purpose of ascertaining the true construction of the claims.

[Ed. Note.—For cases in point, see vol. 38, Cent. Dig. Patents, § 243.]

2. SAME—INFRINGEMENT—SUBSTITUTION OF EQUIVALENTS.

A pulley revolving on a central shaft and one having trunions revolving in bearings at the ends are well known mechanical equivalents, and the substitution of one for the other, which is an element in a patented combination, does not avoid infringement.

3. SAME—IDLERS FOR BELT CONVEYORS.

The Robins patent, No. 571,604, for a belt conveyor, claims 5 and 6 of which cover troughing idlers for supporting such conveyor-belts, were not anticipated, and, in view of the superior utility of the device over those in prior use and its immediate commercial success, must be held to disclose patentable invention. Also held infringed.

Appeal from the Circuit Court of the United States for the Eastern District of Pennsylvania.

For opinion below, see 142 Fed. 221.

. Frank Busser and George J. Harding, for appellant.

Harold Binney and Joseph C. Fraley, for appellee.

Before DALLAS and GRAY, Circuit Judges, and CROSS, District Judge

CROSS, District Judge. . The patent in suit relates to new and useful improvements in conveyor-belt apparatus. It was issued to one Thomas Robins, Jr., November 17, 1896, is known as No. 571,604, and was duly assigned to the complainant on the 30th day of November, 1897. The device is intended for the transportation in bulk of coal, ore, minerals, grain, and other like substances. Conveyor-belts vary in width and length according to circumstances, and, to the end that they may convey the material without spilling, it is desirable that they should be concaved by turning up the edges, giving them a trough-like shape. It is also necessary that they should be supported at frequent intervals to prevent them from sagging, not only of their own weight, but more especially because of the load superimposed thereon. This support is afforded by rollers or pulleys actuated solely by the friction of the belt in passing over them, and they are therefore commonly known as "idlers." It is desirable that these idlers should not only support the belt as above indicated but should also permit it to move over them smoothly and with the least possible friction and disturbance. The patent in suit embraces the composition and construction of a conveyor-belt, and also the idlers or pulleys supporting the

same. It is with the latter portion of the patent only that we are concerned. The claims involved in the suit are Nos. 5 and 6, and are as follows:

"(5) The supporting pulleys, L, K, L, the hollow bearings, F, therefor, and the horizontal and turn-up hollow shafts secured in the said bearings, and the oil devices mounted on the ends of the turn-up shafts, substantially as set forth.

"(6) In combination, the two brackets or castings suitably supported, the horizontal pulley mounted between them, the turn-up shafts secured in the said brackets or castings, and the pulleys L, loosely turning thereon, substantially as set forth."

The bill of complaint is in the usual form, and charges the defendant with infringement of the above claims. The defendant denies infringement, and also denies the validity of the patent in suit. Appellant's brief, however, lays particular stress upon the defense of noninfringement. Conveyor-belts were originally supported by a single horizontal cylindrical pulley, upon which the belt rested in a flat position. Later the belt was supported and troughed by means of a spool-shaped pulley or idler. Both of these forms, however, proved to be objectionable and inadequate; the former because, as the belt was carried flat, there was a constant tendency to spill the load over its sides, and the latter, or spool-shaped pulley, because its varying diameter necessarily caused the belt in its progress to slip, with resultant friction, loss of power, and comparatively speedy destruction. Several patents have been cited as anticipations of the patent in suit, but reliance to show anticipation is chiefly placed upon the Healey patent, issued May 21, 1873, and the Creager patent, issued November 15, 1887. The Healey patent discloses a horizontal pulley in suitable bearings, with separate side pulleys set at an angle with the horizontal pulley to trough the belt. The side pulleys are, however, independently mounted, and do not lie in the same vertical plane with the horizontal pulley. The drawings and specifications clearly disclose an arrangement of the pulleys whereby the horizontal pulley is located to a greater or less degree forward of the angular or troughing pulleys. The result of this construction is that any given cross-section of the belt is not supported by the three pulleys at the same time. It is first supported at the center by the horizontal pulley, and then, as it advances, it is supported at the sides by the angular pulleys. The Healey device was to some extent a paper patent, since it never came into general or extensive use. It had obvious disadvantages. The testimony clearly demonstrates that in its use there is much more friction upon the belt than in the patent in suit. Furthermore, the belt is comparatively soon cracked by sagging between the lateral pulleys where it is unsupported by the horizontal pulley; then, too, the load is not borne so smoothly, nor can it be carried up so steep an incline, because of the constant shaking and joggling of the belt in passing over rollers adjusted in different vertical planes. The Healey patent, although issued about 18 years prior to the patent in suit, never seems to have suggested to any one a construction like that of the Robins patent, which was designed to, and does substantially, obviate all of the disadvantages just adverted to in the use of the Healey patent. The Creager patent is so unlike the complainant's that

it requires but slight consideration. It shows three rollers in the same vertical plane, all turning upon a common horizontal axis. The side rollers, however, are not of cylindrical shape, but are fashioned like the ends of an ordinary spool. This construction perhaps lessened, but did not, since the side pulleys were not of uniform diameter, obviate, the objections inherent in the solid spool-shaped pulley; the same friction, loss of power, and excessive wear upon the belt still existed. With respect to the patents just referred to, the defendant, however, takes the position that while, possibly, neither of them, considered by itself, is like the complainant's or suggests it, yet when it is recalled that the Healey patent discloses three cylindrical rollers with the side rollers set at an angle, but in a different vertical plane, and that the Creager patent shows three pulleys, which, although not cylindrical, are in the same vertical plane, the two patents do, taken together, disclose all that is novel in the complainant's patent, and that there was no novelty or invention in combining them. We cannot, however, assent to this contention. Both patents were old at the time Robins made his invention, yet he was the first to arrange cylindrical rollers so as to trough the belt, and by operating them in the same vertical plane obviate substantially all of the disadvantages, not only of the Healey and Creager patents, but of any other construction known to the art. The device in suit was a success from its inception, it came at once into general use, and we are satisfied is of manifest novelty and great utility. The testimony shows that it practically doubles the life of the belt, because of the reduced friction and the regular and constant support which it receives. This consideration, coupled with its undoubted commercial success from the outset, would be entitled to turn the scales in favor of the validity of the patent, if it were otherwise in doubt. "Where the patented invention consists of an improvement of machines previously existing it is not always easy to point out what it is that distinguishes the new and successful machine from an old and ineffectual one. But when, in a class of machines so widely used as those in question, it is made to appear that at last, after repeated and futile attempts, a machine has been contrived which accomplishes the result desired, and when the patent office has granted a patent to the successful inventor, the court should not be ready to attempt a narrow or astute construction, fatal to the grant." Keystone Mfg. Co. v. Adams, 151 U. S. 139, 144, 14 Sup. Ct. 295, 297, 38 L. Ed. 103. "The argument drawn from the commercial success of a patented article is not always to be relied upon. Other causes, such as the enterprise of the vendors and the resort to large expenditures in advertising, may cooperate to promote a large marketable demand. Yet, as was well said by Mr. Justice Brown in the case of Consolidated Brake-Shoe Co. v. Detroit Co. (C. C.) 47 Fed. 894: 'When the other facts in the case leave the question of invention in doubt, the fact that the device has come into general use, and has displaced other devices which had previously been employed for analogous uses, is sufficient to turn the scale in favor of the existence of invention.' Krementz v. The S. Cottle Co., 148 U. S. 560, 13 Sup. Ct. 721, 37 L. Ed. 558. At this point we are constrained to say that we cannot yield our assent to the argument that

the combination of the different parts or elements for attaining the object in view was so obvious as to merit no title to invention. Now, that it has succeeded, it may seem very plain to any one that he could have done it as well. This is often the case with inventions of greatest merit. It may be laid down as a general rule, though perhaps not an invariable one, that if a new combination and arrangement of known elements produce a new and beneficial result never attained before, it is evidence of invention. It was certainly a new and useful result to make a loom produce fifty yards a day, when it never before had produced more than forty, and we think that the combination of elements by which this was effected, even if those elements were apparently known before, was invention sufficient to form the basis of a patent." Loom Co. v. Higgins, 105 U. S. 580, 591, 26 L. Ed. 1177. See, also, Topliff v. Topliff, 146 U. S. 156, 164, 12 Sup. Ct. 825, 36 L. Ed. 658; Consolidated Valve Co. v. Crosby Valve Co., 113 U. S. 157, 179, 5 Sup. Ct. 513, 28 L. Ed. 939; Magowan v. New York Belting Co., 141 U. S. 332, 343, 12 Sup. Ct. 71, 35 L. Ed. 781; The Barbed Wire Patent, 143 U. S. 275, 292, 12 Sup. Ct. 443, 36 L. Ed. 154.

The defendant insists, however, that there is nothing in the claims under consideration which necessarily requires that the axes of the three pulleys shall be in the same vertical plane. The claim refers to two brackets or castings, suitably supported, with horizontal pulleys mounted between them, and turn-up shafts are described as secured in said brackets or castings. This language indicates, and we think means, that the three pulleys are to be mounted with their axes in the same vertical plane. The language used, without straining it, permits this construction, and a reference to the drawings and specifications removes any possible doubt which might otherwise exist. Moreover, it seems to us that a construction of the claim which would require that the axes of the pulleys should be located otherwise than in the same vertical plane would clearly be forced and unnatural. The construction which we have adopted is consistent with the other requirements of the claim, and certainly does no violence to any of them; but, if any doubt existed as to the meaning of the claim, or if it were susceptible of two interpretations, it would be both right and proper that reference should be made to the drawings and specifications, not for the purpose of changing or altering the claim, but to ascertain its true and proper interpretation. "In a case of doubt, where the claim is fairly susceptible of two constructions, that one will be adopted which will preserve to the patentee his actual invention." McClain v. Ortmayer, 141 U. S. 419, 425, 12 Sup. Ct. 76, 78, 35 L. Ed. 800. "The court should proceed in a liberal spirit, so as to sustain the patent and the construction claimed by the patentee himself, if this can be done consistently with the language which he has employed." Klein v. Russell, 19 Wall. 433, 466, 22 L. Ed. 116. The claim must be read in the light of the description, and, if it be fairly susceptible of two meanings, that construction must be adopted which will sustain, rather than defeat, the patent." McEwan Bros. Co. v. McEwan (C. C.) 91 Fed. 787. See, also, Stilwell-Bierce & Smith-Vaile Co. v. Eufaula Cotton Oil Co., 117 Fed. 410, 414, 54 C. C. A. 584; Electric Smelting & Aluminum Co. v.

Carborundum Co., 102 Fed. 618, 42 C. C. A. 537; Hogg v. Emerson, 11 How. 587, 606, 13 L. Ed. 824. Thus interpreted, all doubts are dissipated, and we find that the claim requires that the three pulleys be mounted with their axes in the same vertical plane.

Claim 6 as thus defined is clearly infringed by the defendant's device, which has a central pulley supported by two brackets, and the equivalent of turn-up shafts secured in said brackets. The additional brackets or supports at the ends are immaterial, and, as one of complainant's experts says of them, "they secure the shafts in their bearings as called for in claims 5 and 6 of the patent in suit." The substitution of pulleys integral with their central shaft or trunion ends rotating in sockets for pulleys loosely revolving on shafts whose ends are fixed is too obvious, as well as too old in mechanical arts, not to make one the equivalent of the other in a case like the present. It is clearly a case of attempting to avoid infringement by the use of mechanical equivalents. The defendant's devices have the three-pulley combination for supporting and concaving the belt at a single cross section or line, and the pulleys are in the same positions and relations with each other, and mounted in the same relative position between brackets, as the patent in suit. The form has been changed to the extent that the pulleys in the defendant's device have trunions revolving in fixed bearings, while the complainant's has a fixed axis, with pulleys turning loosely thereon. The only differences are inconsequential and manifest evasions. There is a constant tendency by those who seek to evade the claims of a patent to dwell too much on verbal refinements, and not enough on the reality and substance of the things to which the language of the claim refers. This tendency must be avoided in order to do justice to inventors, and it sometimes must be avoided in order to protect the public from too great a scope of the monopoly claimed by the patentee. It is true that the law requires that precise invention of the patent should be described adequately in the claims, and, if the patentee has claimed less than he is obviously entitled to, as manifested in the specifications and drawings, he must suffer the consequences. But this requirement of the law only makes the caution above expressed the more necessary, and mere verbal refinement must not be allowed to obscure the real nature of the patented invention, if it can be fairly gathered from the language of the claims. We are therefore clearly of the opinion that the defendant's device infringes claim 6 of the patent in suit.

Claim 5 is like claim 6, except that it provides for oil devices mounted on the ends of the turn-up shafts. Oiling devices of a somewhat similar construction and purpose are old, but, as applied and used in the patent in suit, whereby the oil passing down the hollow shaft with the turn-up ends, and passing through apertures in the shaft, lubricates all of the pulley bearings without the use of separate grease-cups, disclose a true combination. The method of oiling adopted by the patent in suit is novel, and harmonizes peculiarly well with its hollow shaft and pulley arrangement. The respondent's oiling device adopts the same principle and substantially the same method and construction, so far as it can, considering that the complainant's pulleys run loosely upon the shaft and the defendant's upon trunions supported by brackets.

The patent in suit has a hollow shaft, through which the oil passes to lubricate the pulleys, while the defendant uses hollow brackets, through which the oil passes to lubricate the trunions of the pulleys. Both have the oil cups mounted on, or at the ends of, the side pulley, and on or at the ends of the turn-up shafts or trunions. They therefore both accomplish the same result by the same means, in substantially the same way.

We therefore conclude that claim 5 is likewise valid, and has been infringed by the defendant.

The decree below will be affirmed, with costs.