## ROCKWOOD v. GENERAL FIRE EXTINGUISHER CO.

(Circuit Court of Appeals, Second Circuit. June 8, 1925.)

No. 303.

1. Patents ⬩42—Novel application of gravity may be invention of high order.

A novel application of force of gravity to increase utility in an existing machine may be an invention of high order.

2. Patents ⬩36—Value and extensive use of device weighs heavily in favor of patent's validity.

Value and extensive use of a patented device weighs heavily in favor of patent's validity.

3. Patents ⬩328—Reissue 14,746, for dry pipe valve used in sprinkler system held properly granted.

Reissue No. 14,746, of Rockwood patent for a dry pipe value used in a sprinkler system, to specify that all water passing through system must pass through both valve seats, thereby distinguishing it from Rice patent No. 740,467, held properly granted, in view of reissue statute (Rev. St. § 4916 [Comp. St. § 9461]).

4. Patents ⬩51(1)—No anticipation because device relied on might by modification accomplish function performed by patent in question.

It is not sufficient to constitute an anticipation that a device relied on might by modification be made to accomplish function performed by the patent in question, if it were not designed by its maker, nor adapted, nor actually used, for performance of such functions.

5. Patents ⬩54—Nonuse of patent alleged to constitute anticipation of plaintiff's patent a strong indication of its lack of merit.

Where defendant had owned patent alleged to constitute an anticipation of plaintiff's patent for 22 years and had not used it, it was a strong indication of its lack of merit or utility.

6. Patents ⬩328—Reissue No. 14,746, for a dry pipe valve used in sprinkler system, claim 3, held infringed.

Rockwood reissue patent, No. 14.746, for a dry pipe valve used in a sprinkler system, claim 3, held infringed; there being nothing in prior art suggesting patent or establishing anticipation.

**7. Patents ⟨⟩238—Infringement not avoided because one part in device constituting infringement performs two functions.**

That one part in device constituting an infringement of patent in suit performs two functions does not avoid infringement.

**8. Patents ⟨⟩236—Substitution, even though disguised to some extent, did not avoid infringement of patent for dry pipe valve used in sprinkler system.**

Where defendant had succeeded in appropriating all that was of value in patentee's device for a dry pipe valve used in a sprinkler system, substitution of one form of counterweight for the other in the device, even though disguised to some extent, did not avoid infringement.

Appeal from the District Court of the United States for the Southern District of New York.

Suit for infringement of patent by George I. Rockwood against the General Fire Extinguisher Company. Decree for defendant, and plaintiff appeals. Reversed.

Louis W. Southgate and O. Ellery Edwards, both of New York City, for appellant.

Charles Neave, of New York City, and Everett E. Kent, of Boston, Mass., for appellee.

Before ROGERS, MANTON, and HAND, Circuit Judges.

MANTON, Circuit Judge. The appellant had issued to him letters patent No. 14,746, which were granted on the reissue of October 28, 1919, on an application filed February 28, 1919. It is for a dry pipe valve used in a sprinkler system. The claims sued upon are claims 1, 2, 3, 4, and 7. The automatic sprinkler system is an apparatus for automatically distributing water upon a fire, for the purpose of checking or extinguishing it. The water is led under pressure to such system through piping attached to the ceiling of the building to be protected. Sprinkler heads are attached at intervals along the pipe. Each such head consists of a shell or casing having an orifice closed by solder or fusible material. When this material melts, due to the heating of the air around it, the sprinkler heads open and the water is discharged on the area protected by the sprinkler heads. The purpose of the sprinkler system is primarily to protect property against fire, and secondarily to receive a low rate of insurance, for a building adequately protected by the fire-extinguishing apparatus lowers the rate of insurance. Efficiency of the apparatus is what both the insurance company and the owner desire.

In many buildings, such as warehouses, car barns, wharves, and garages, where heat is not desired, it is impractical to use water in the sprinkler pipes because of the danger of freezing. In such case, it becomes necessary to use the dry pipe system. In that system, the pipes are filled with air, instead of water, and a dry air valve is placed in the feed pipe to each dry pipe system. The dry pipe system valve is an automatic device designed to hold back the water until the air pressure has been reduced through the opening of one or more of the sprinkler heads. In this system it is not necessary that air be pumped up to the pressure of the water, to hold back the water until needed. Indeed, this cannot be done as a practical matter, because it is difficult to maintain the air under high pressure, due to small leaks that are apt to occur and allow water to flood into the system. The dry air system is arranged so that a light air pressure will hold back a heavy water pressure, and the valve is arranged so that it will open automatically upon the decrease of air pressure, caused by the melting or opening of one or more of the sprinkler heads. The water pressure is usually three or four times the air pressure; the common ratio being 35 pounds of air pressure to hold back 150 pounds water pressure. This points out the importance of the dry pipe valve, namely, that it must be an efficient and perfectly operating piece of mechanism. A failure to work or operate may, and usually does, cause considerable damage.

Up to the time of the appearance of the appellant's valve, the Grinnell No. 12 dry pipe valve was used by the appellee. It consisted of a casing in which a piston carrying two valves is fitted to reciprocate vertically as one part. The lower valve is called the water valve, and it closes the water inlet to the valve case. The upper valve is called the air valve, and it is made much larger in diameter than the water valve. The space between the water valve and the air valve is termed the differential chamber. The air valve, when closed, prevents the air pressure from reaching the differential chamber. In practice, the dry pipe valve casing is partly filled with water. The air pressure in the system pushes downward on the water, and then downward on the piston. This down push of the air on the piston pushes and holds the valves to their seats. The difference in the area of the air valve and the water valve gives the necessary differential. This dry pipe valve is referred to as the pop pet valve, because it pops open; and, since the appearance of the appellant's de-

vice, it has been discarded. It had defects because of restricted waterway and functional because of a latch that might rust. After the appellee began to use the valve, which is charged here to be an infringement of appellant's, the appellee announced to the trade that the manufacture of this valve (Grinnell's) had been discontinued, but they announced that they could make replacements.

The appellant says that the object of his invention is to provide an improved dry pipe valve adapted for use in a system of automatic sprinklers, said valve being inserted in the water supply pipe to the sprinkler system, by which the pressure of water is resisted by an air pressure in the pipe between the dry pipe valve and sprinklers, and the invention consists of the construction and arrangement of parts as described and pointed out in the claims. The valve casing is provided with a water valve seat and an air valve seat. A circular valve plate has an arm or plate attached thereto, which is pivoted to the casing at the left of the waterway. The valve plate carries a depending valve on its under side, forming a water valve for closing the water supply. The air valve is much larger in diameter than the water valve, so as to obtain a differential action whereby a relatively light air pressure will hold back a much heavier water pressure. The valve plate swings as far as it can by arrangement of the parts, so that the valves will be out of the way of the waterway extending through the valve casing, and will not obstruct the water.

The inventor describes his patent by pointing out that the valve plate is provided with an arm upon the end of which is mounted a counterweight, and in the closed position of the valves the counterweight fails to exert sufficient force to rock the valve plate at its pivot, as the center of gravity of the counterweight is arranged nearly in a vertical plane above the pivot, so that, when the valves are closed, the center of gravity of the rocking parts is slightly toward the valve seats relatively to a vertical plane passing through the axis of the pivot or hinge, whereby gravity normally acts to keep the valves on the seats, and becomes effective to rock the valves away from the seats after an initial opening movement thereof, and long before they are wide open. If, for any reason, the air pressure in the valve casing should be destroyed, the pressure of water in the supply pipe will leave the valve plate and rock it into position shown by the broken lines in the drawing, carrying the counterweight into the position indicated by the broken lines. During the swinging movement of the valve plate, the counterweight exerts a constantly increasing force, which soon becomes sufficient to raise the valve plate into a lifted position independent of the pressure of water beneath it.

By this the inventor applies the force of gravity. He has taken advantage of the law of gravity in working out his idea. In operation, the center of gravity is slightly toward the valve seats, and gravity normally acts to keep the valves on the seats. This enables the system to be charged or primed with air and the water to be turned on. It is the normal position of the valves as the dry pipe valve stands ready for use, with gravity acting lightly to help the air pressure keep the valves on their seats. When the valve is called into operation by the opening of one or more of the sprinkler heads, which allows a decrease of the air pressure on the top of the valve plate, the water pressure, acting underneath the plate, will start to lift the plate. The valves having been given the initial opening movement, so that the radius of the center of gravity will coincide with the perpendicular through the pivot, it will bring the swinging parts to the point of balance; that is, to a position where gravity acts directly down through the pivot and has no tendency to move the valve either to the right or to the left. This initial opening movement of the valves from the normal position to the point of balance can take place very easily, as it is accomplished with very little lifting of the parts to overcome gravity.

When the valves reach this point of balance, they are still in the waterway—that is, directly in the passage between the inlet and outlet of the casing—and the valve plate is still subject to the impact of the inflowing water. But, having reached the point of balance with the valves still in the waterway, the upward rush of the water, acting on the under side of the valve plate, will move the valves further on to the left, so that the radius of the center of gravity will then move to the left of the perpendicular, and as gravity is applied with increasing force, independent of the water pressure or flow, it moves the valves on to their extreme left-hand position, where they stand to one side of the waterway, leaving a clear or unobstructed passage through the valve casing. Therefore, the valves will be held to the left and from returning to their seats as the center of gravity is then away over to the left. If there be a back surge of water, or a hard slam of the valves as they reach the extreme left-hand position, which might tend to cause them to

return to the closed position, gravity will prevent such a return, as the center of gravity would have to be lifted from the position in the extreme left up to the position of vertical before its locking effect will be overcome. To overcome the locking effect that gravity exerts through a counterweight, there must be of necessity considerable lifting of the swinging structure. If the valves should return to their seats, the flow of water would be obstructed and the system rendered useless through water columning. This is true, even though many sprinkler heads may be opened by the fire. Efficiency is obtained by so constructing the valve that it will not return to its seat when once called into operation.

[1, 2] At first the inventor provided for a counterweight which was held to the arm of the valve by a lever. Later the counterweight was made an integral part of the swinging structure. The inventor has provided a differential dry pipe valve, which will stay locked in its open position solely by the force of gravity. He eliminated any dependence on a latch. What he accomplished was an improvement in this art. Its extensive use and success point out a discovery of merit. While gravity is a simple, well-understood force, a novel application of it to increase utility in an existing machine may be an invention of high order. Eibel Process Co. v. Minn. Paper Co., 261 U. S. 45, 43 S. Ct. 322, 67 L. Ed. 523. Since the appellant's valve has been placed on the market, it has met with what might be termed universal adoption in the dry pipe system. Some 7,000 were placed in different locations since 1908, and in determining whether the patentee has added anything to the sum of human knowledge, or made this fire-extinguishing system safer, may be answered in large measure by this performance. Its value and extensive use weighs heavily in favor of its validity. O'Rourke Engineering Co. v. McMullen, 160 F. 938, 88 C. C. A. 115.

[3] A reissue was applied for in an effort to have the claim distinguished from the patent to Rice, No. 740,467, granted October 6, 1903. The reissue claim provided for the phrase, or the equivalent thereof, "comprising a casing having two valve seats, through both of which all the water passing to the system must flow." This was incorporated to limit the invention to an unobstructed differential dry pipe valve, and for the purpose of distinguishing the invention from the Rice device. Another change was made to bring out the peculiar gravity action, but the prime purpose of the reissue was to specify

that all the water passing through the system must pass through both valve seats. The reissue statute (Rev. St. § 4916 [Comp. St. § 9461]) permits a reissue when the patentee has claimed as his invention or discovery more than he had a right to claim as new, and where this is done through inadvertence, accident, or mistake, and without any fraudulent or deceptive intention, no just complaint can be made. We think the reissue was properly granted. Abercrombie & Fitch v. Baldwin, 245 U. S. 198, 38 S. Ct. 104, 62 L. Ed. 240; Paper Bag Patent Case, 210 U. S. 405, 28 S. Ct. 748, 52 L. Ed. 1122.

We are referred to the dry pipe valves of the prior art in the claim of anticipation which is set up as a defense. The patent most relied upon is Crosby's dry pipe valve, granted December 31, 1921, No. 690,239. Crosby apparently had in mind the problem of making a perfectly operating unobstructed differential dry pipe valve. He placed a small water valve and a larger air valve on the valve plate, and hinged the valve plate at the left, so that the valves, when opened, would move out of the waterway through the valve casing, and thus provide a clear waterway when the valves were opened. He arranged the swinging parts, so that they would require a great force to raise the valves to a position where gravity would tend to open them. The tests shown point out that it took 80° movement of the valves to reach the point of balance. By using this great portion of the opening movement to pass the center of gravity over to the left, there was little movement left to hold the valves in open position. He encountered his difficulty in getting the valves opened and having them stay open. To overcome this difficulty, he provided an additional apparatus to the right, which is referred to as a vacuum apparatus. Vacuum or tension was applied by this apparatus to a differential chamber between the two valves, to suck the valves normally down on their seats. The vacuum apparatus was connected to the riser extending from the dry pipe valve up to the sprinkler system, so that, when the valves opened, water would be allowed to pass around underneath the valve plate, whereby the differential would be broken, and, if the valves should return to their seats, water columning would be prevented.

The vacuum apparatus proved ineffectual when it was used. One of the appellee's experts testified that it was an impracticable device and would not pass the board of insurance experts. In the patent, Crosby says that, "should a valve which is held closed by

the pressure in the system return to its seat after once opening, the column of water above the movable member may be of sufficient height to hold the valve closed against the pressure in the supply, and thus prevent further flow of water to the system." And he points out that the object of his invention, therefore, is to present a simple and efficient means for preventing columning of the valve after it has once opened, and this, he says, he accomplishes by providing a passage from the supplemental chamber to the system, which passage is normally closed, but is permanently opened upon the reduction of the pressure in the system and consequent opening of the main valve.

[4, 5] He further points out that, after the valve is once opened, he prevents the columning by providing a passage from the supplemental chamber to chamber (2), or to the system and supplemental valve normally closing the passage, and constructed or arranged to be held to its seat by the pressure of the system until said pressure is reduced, and to be opened upon reduction of the pressure and remain open until intentionally closed. And he says: "In employing this feature in the valve shown, which also embodies the other features of invention already described, it is preferred for the sake of simplicity of construction to utilize the pipes 16 and 24, the chamber 20, and the valve 23 for preventing columning of the valve, as well as for the purpose described."

This means for preventing columning of water was complicated and proved to be impracticable. But the appellee says it discarded the vacuum apparatus, and it has merely reorganized the Crosby valve, and that therefore the Crosby invention is an anticipation. It is using but a part of Crosby's apparatus to do so, and the Crosby valve is not adapted for such use. Tests were made, using the Crosby valve without the vacuum apparatus. It was found necessary to move the valves to more than wide-open position before the point of balance was reached, and the point of balance was 81°. This is a different application of the force of gravity, when compared with the appellant's use of it in his valve, and, indeed, we think it is a different application of the force of gravity as used in the operation of the appellee's valves. The tests made prove that the Crosby valve without the vacuum was inoperative 50 per cent. of the time. The appellant's valve has never failed and has a record of 100 per cent. Therefore, even modifying the apparatus of Crosby, it is not a successful device, and would not be capable of commercial use for fire-extinguishing. It is not sufficient to constitute an anticipation, that a device relied upon might by modification be made to accomplish the function performed by the patent in question, if it were not designed by its maker, nor adapted nor actually used, for the performance of such functions. Consolidated Valve Co. v. Crosby, 113 U. S. 171, 5 S. Ct. 513, 28 L. Ed. 939; Topliff v. Topliff, 145 U. S. 161, 12 S. Ct. 825, 36 L. Ed. 658.

It also appears that the appellee has owned the Crosby patent for 22 years; it has not used it, and this is a strong indication of its lack of merit or utility. The patent to Rice shows a three-valve differential dry pipe valve. The water valve is arranged vertically to the right of the air valve, and is connected to the water valve by a C-shaped lever pivoted at the right of the water valve. A third independently pivoted valve is arranged above the water valve. The valve casing is filled with priming water, and the pressure of the air is carried around through a small passage, so as to press to the left on the right hand side of the air valve. The claim is that the water valve, the C-shaped connecting lever, and the air valve are arranged so that gravity will normally act, so as to keep those two out of the three valves on their seats, and so that, after an initial opening movement, they will rock to the right and move the water valve to an open free position.

But this is not what Rice describes. He says that the small aperture in the lever is to allow the insertion of the point of a tool, which is introduced through the aperture normally occupied by the removable plug; this plug being removed for this purpose when desired. The tool engaging the lever is used to draw the valve to its seat, and then strain is put upon it to cause it to hold the valve tightly against its seat, while the water and air systems are being properly filled and put under pressure. It is this straining which normally holds the valves on their seats. It was not intended to let the valves normally and lightly seat by gravity, and apply gravity to rock them open only after an initial opening movement thereof. The Rice patent has been owned by appellee since May 15, 1909. The evidence does not show that the valve was ever built, and appears to have had no practical utility. This is well spoken by its nonuse for 15 years. The patent to Brass, No. 721,858, granted March 3, 1903, provides for the air valve and water valve mounted upon a pivoted lever and valves, and the lever always remaining in the

water passage, whether they are open or closed. The appellee's expert proclaimed it to be an imperfect device, and condemns it substantially for the same reasons that he did the Rice patent. These obvious disadvantages dispose of the patents which are relied upon as the best effort on the defense of anticipation. They might be termed paper patents; they never came into general or extensive use and this because of their obvious disadvantages. Robins Co. v. Amer. Road Co., 145 F. 924, 76 C. C. A. 461.

The appellee's dry pipe valve comprises a valve casing having a water valve seat and an air valve seat. The water valve seat is horizontally arranged and the air valve seat is inclined at an angle of 45°. A circular valve plate is used. It is depressed or sunk to its center, and this depressed portion pivotally carries a water valve inclosing a water supply pipe. The valve plate carries at its edge a flexible ring forming an air valve coacting with the air valve seat. The valve plate is larger in diameter than the water valve, so as to obtain the differential action whereby a relatively light air pressure will hold back a much heavier water pressure. There are two lugs on the top of the valve plate just above the depressed portion thereof, and two very large lugs are arranged near the bottom edge thereof. Two very large and heavy arms of swelling and bulging shape are connected to these lugs. The forward ends of these bulging arms are connected to the two upper lugs by a single bolt, the middle portion of which arm is connected to one of the large lower lugs by a separate bolt. The lower ends of the two bulging arms are bored out, and are fitted on a pivot secured to the valve casing. These parts swing as one piece on the pivot. The parts are so arranged that, when the valve play swings up as far as it can, the parts will be out of the waterway extending through the valve casing, so that there will be an unobstructed passage there through. The appellee's expert testified that the initial opening movement of the valve from closed position to the point of balance was 19½°, and the total movement of the valve from closed to wide open position 51°. The radius of the center of gravity, taken by drawing a line through the pivot and the center of gravity of the swinging structure, is 19½° toward the valve seats.

Much of the metal of the rocking structure is disposed to the left of the right-hand line, which indicates the position of a radius of gravity when the valves are closed. The following parts, two upper lugs, the long bolt, two large lower lugs, two short bolts, two large bulging arms, and a small part of the valve plate itself, are thus arranged. The weight of the metal to the left of this line effectively forms a counterweight. With the center of gravity 19½° toward the valve seats, gravity normally acts to keep the valves lightly on their seats, and this permits the system to be charged with air and the water to be turned on. It is the normal position of the valves as the dry pipe valve stands ready for use; the gravity acting lightly to help the air pressure to keep the valves on their seats. When the dry pipe valve has been in operation by the opening of one or more of the sprinkler heads, allowing the decrease of air pressure on the top of the valve plate, so that the water pressure acting underneath the plate will start to lift the same, the valves having been given an initial opening movement of 19½°, so that the radius of the center of gravity will coincide with the perpendicular through the pivot, then gravity acts directly down through the pivot and has a tendency to move the valves to the left and to hold them in position; this, of course, after the swinging parts pass the point of balance. The initial opening movement of the valve is only 19½°. That opening may be easily obtained by the water pressure, as it takes very little lifting of the parts to overcome the gravity when the plate is seated; and it is noticeable that, when the point of balance is reached, the seat is still in the waterway—that is, directly in the passage between the inlet and outlet of the casing—and the valve plate is still subject to the impact of the inflowing water.

But, having reached the point of balance with the valve still in the waterway, the upward rush of the water, acting on the under side of the valve plate, will move the plate further to the left, so that the radius of center of gravity will then move to the left of the perpendicular. Gravity then applying its force, there is an ever-increasing force, independent of the water pressure or flow, to move the valves to the extreme left-hand position, where they stand clear of the waterway, and permit the unobstructed passage to the valve casing. When the parts reach this position, the valves will be held from returning to their seats, as the center of gravity is then over to a point 31½° to the left. If, then, there should be a back surge of the water, or a hard slam of the valves as they reach their extreme open position, which was the cause of again seating the Crosby valve, gravity will prevent such a return, as the center of gravity would have to be

lifted from the position to the left before its locking effect could be overcome. It is therefore apparent that the appellee in its structure uses the gravity action upon the same principle and with the same force and effect as does the appellant. The appellee adds a latch to its apparatus, but it is never called upon to function. It is the quick shifting of the center of gravity from the right to the left after the initial opening movement of the valves, and the holding and rocking movement obtained after the shifting takes place, that holds the valve in position. Appellee wrote of this valve that "there are no openings into the intermediate chamber that could cause the loss of any considerable amount of water, and under service conditions the operation of the valve is entirely independent of the latch."

The only difference between the appellant's and appellee's valve is that the latter employs the metal parts for the purpose of obtaining the counterweight while the appellee uses a counterweight as an integral part of the arm. Indeed, the arm used by the appellee is much the same in design as appellant's. But it is argued that strains and stresses upon the arm require that the appellee make its device with the parts described. The air valve in appellee's structure is larger than the water valve, and the air pressure is the force which holds the water valve closed. The appellee increases the differential obtained by the difference in the size between the large air value and the small water valve by a peculiar system of leverages; but gravity normally acts to keep the appellee's valves on their seats, and that is all that is necessary in the action of keeping closed the valve. It is self-evident that, the more metal the appellee puts into its arms, the more counterweight it gets to the left of the center of gravity. Even though this may be said to strengthen the arm, and assuming that it is desirable to use two arms, and make them heavy, and arrange them to the left of the center of gravity, the fact that they are designed even primarily for strength does not take away from their function as a counterweight.

[6-8] The parts of the appellee's swinging arm or metal structure which are to the left of the line passing through the pivot and the center of gravity constitute the means under claims 1, 4, and 7 of the appellant's patent. That these parts perform the functions of connecting the valve plates around the hinge is immaterial. The appellee has copied the idea of the counterweight, by placing the weighted material in the arm between the valve plate and the hinge in its commercial valve and infringes those claims. The appellee's parts at the left of the radius of the center of gravity counterweight its valves, so that gravity normally acts to keep the valves on their seats, and becomes effective to rock the valves away from their seats only after the initial rocking movement is made. This is what the appellant provided for as his weight and gravity action and makes the appellee's device infringe claim 3. Claim 2 provides for "a counterweight for said plate arranged in a position above the pivot of said plate, so that gravity will become effective to rock said plate after an initial opening movement of the valves." The parts which we have referred to as equivalent of the counterweight which are found upon the arm are the equivalent of the counterweight which is made an intergral part of the appellant's device. The appellee has used a small part of the valve plate which carries part of the air plate ring also for the purpose of forming part of the counterweight. The fact that one part performs two functions does not avoid infringement. Nathan v. Howard, 143 F. 893, 75 C. C. A. 97; Bundy Co. v. Detroit Time Co., 94 F. 538, 36 C. C. A. 375. The appellee has succeeded in appropriating all that was of value in appellant's device, and the substitution of one form of counterweight for the other, even though disguised to some extent, does not avoid infringement Hoyt v. Horne, 145 U. S. 309, 12 S. Ct. 922, 36 L. Ed. 713.

We think the appellant has made a useful and valuable improvement in the art, to which the trade has responded favorably. Nothing in the prior art suggests it or establishes anticipation, and the proof of infringement is ample. There should have been a decree below for the appellant.

Decree reversed.