O'ROURKE ENGINEERING CONST. CO. v. McMULLEN et al.

(Circuit Court of Appeals, Second Circuit. January 22, 1908. On Rehearing, April 14, 1908.)

No. 97.

1. PATENTS—INVENTION—EVIDENCE OF INVENTION.

When the court has to deal with a device which has achieved an undisputed success, and accomplishes a result never attained before, which is new, useful and in large demand, it is generally safe to conclude that the man who made it is an inventor.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 38, Patents, § 39.]

2. SAME—INFRINGEMENT—AIR LOCK FOR CAISSONS.

The Moran patent, No. 500,149, for an air lock for caissons in which work is carried on under an air pressure greater than that of the atmosphere, by means of which a bucket can be lowered into and hoisted from the working chamber by a continuous movement, whereas previously two hoists and two sets of tackle had been necessary, discloses invention, and covers a device of great merit and utility. Claim 2, in specifying a valve "closing against" the fall rope, does not include by implication as a necessary part a stuffing box or packing on the valve or a stuffing box on the rope. As so construed, claim 2 *held* infringed. Claim 3 *held* void for lack of invention, and, if conceded, validity not infringed.

3. SAME—SUIT FOR INFRINGEMENT—PLEADING.

That a bill for infringement of a patent alleged infringement in a certain district only, omitting the usual words "and elsewhere," will not prevent the consideration of evidence of infringement outside of such district, where the answer denied infringement in such district or elsewhere, and the pleadings were treated as presenting such issue.

4. SAME—INVENTION—AIR LOCKS FOR CAISSONS.
  The Barr patent, No. 514,843, for an air lock for caissons, *held* void for lack of invention as to claims 1, 3, 4, 6, and 8.

Appeal from the Circuit Court of the United States for the Southern District of New York.

For opinion below, see 150 Fed. 338.

W. D. Edmonds, for appellant.

Gifford & Bull (I. Edgar Bull, of counsel), for appellees.

Before LACOMBE, COXE, and WARD, Circuit Judges.

WARD, Circuit Judge. This action is brought for infringement of letters patent, No. 500,149, to D. E. Moran, and No. 514,843 to William C. Barr, duly assigned to complainant.

The subject of the controversy is an air lock in combination with a caisson used in construction work at levels beneath the water line, such combination having been long in use. The caisson sinks as excavation continues, the water being kept out by compressed air constantly pumped into the caisson. If the empty bucket were carried directly into the caisson or the full bucket out of it, the compressed air would rapidly escape, and for this reason an intermediate lock or chamber between the caisson and the open air has always been used. Devices whereby pressure in the working chamber could be cut off from the lock, such as a door between the two were familiar. If the bucket were coming from the outer air the door between the lock and the working chamber was closed, the air in the lock was equalized with the atmosphere, the bucket was then introduced in the lock, the air in the lock equalized with that in the caisson, the door between them opened, and the bucket lowered into the working chamber and vice versa when the loaded bucket was coming out. This always involved two separate hoists, one from the caisson into the lock and another from the lock into the open air and vice versa. Moran's was the first lock which permitted the continuous and uninterrupted hoist from the caisson into the upper air and descent from the upper air into the caisson. He accomplished it by passing the hoisting fall through a hole in the center of a two-part gate or valve separating the air lock from the outer air with a device to prevent the undue escape of the compressed air. It was an undoubted improvement, and as such has been generally adopted.

The two claims relied upon are:

"2. The combination in an air lock of a two-part valve with a rope opening at the center with a seat on the inner side of the air lock and a rope at the center against which the valve closes substantially as specified.

"3. The combination in an air lock of a two-part valve opening in the air lock closing against a seat in the inner side of the air lock and a central opening in the valve and stuffing boxes to close the same, substantially as specified."

These claims are not very clear, but we read them thus: 2. (a) Two-part valve; (b) Opening for rope at center of valve; (c) valve seat on inner side of air lock; (d) rope against which valve closes either by means of a stuffing box or packing on the valve or by means of a stuffing box on the rope. 3. (a) Two-part valve; (b) opening for rope at center of valve; (c) valve seat on inner side of air lock; (d) stuffing box on rope. In other words claim 2 is larger and covers all the means

mentioned in the specifications of making the central opening air-tight, whereas claim 3 covers only the stuffing box, T, which is carried on the rope.

Claims 1, 3, 4, 6, and 8 of the Barr patent are sued upon. They cover the mechanism that moves the two-part valve doors horizontally, and the first claim may be quoted as illustrative of the mechanism:

"1. An air lock for caissons comprising upper and lower gates, pistons connected to said gates and operating in cylinders and connections between said cylinders and the air-confining cylinder of the caisson whereby said pistons and gates are operated by the air pressure in the caisson, substantially as set forth."

The defendants Richard Deeves & Son had the contract to build an extension to the Manhattan Life Building on Broadway in the city of New York, and they employed the defendant McMullen to do the foundation work. McMullen used two caissons with air locks carrying stuffing boxes on the hoisting fall which concededly infringed the patent sued upon, if valid, but the judge of the Circuit Court found that those two locks were licensed under both patents, and had not been reconstructed as distinguished from being repaired (Shickle v. St. Louis Car Company, 77 Fed. 739, 23 C. C. A. 433; Goodyear Company v. Jackson, 112 Fed. 146, 50 C. C. A. 159, 55 L. R. A. 692) in which conclusions we agree with him, so that they are out of the case. McMullen used two other unlicensed locks, described as the 1901 locks, which were like those in the patents sued upon, except that no stuffing box was carried on the hoisting rope, and no flexible packing was used, metallic bushing in the center opening of the two-part valve being substituted for it. The defendant claims that these locks having never been used in New York City were not covered by the bill, which alleged infringement in New York City only, but, without passing on this question at all, we proceed to inquire whether the claims of the patent sued upon are valid.

Although we have read the claims 2 and 3 of the Moran patent somewhat differently from the judge of the Circuit Court, we have arrived at the same conclusions. If the combination of the rope and a stuffing box carried on the rope with the two-part valves which we think covered by claim 3 is patentable, the answer to the complainant's claim is that the defendants did not use this combination on these 1901 air locks.

Taking up claim 2 we agree with the judge of the Circuit Court that the combination with the two-part valve of flexible packing or of a stuffing box fixed to the two-part valve at the central opening involved no invention. Every element was old. Two-part valves or gates opening upward or downward or horizontally were old; the running of hoisting falls through the center of such gates or valves was old; the location of such gates or valves under pressure against the inside so that the pressure would tend to make them tight was old; packing or stuffing boxes to prevent the escape of steam of heated gases was old. So in the case of the Barr patent, the horizontal gates of the lock were moved by compressed air moving pistons connected with the gates in one direction or the other according as the air was admitted into one end or the other of the cylinders in the usual familiar way.

The specifications show that Moran contemplated some sort of packing to make a close joint. McMullen apparently was the first person to discover that the necessary air-tightness could be accomplished by using merely metallic bushing. However, we do not think that the use of either a stuffing box or of flexible packing or of metallic bushing in combination with and fixed in a two-part valve to make the central opening air-tight involved invention. Although Moran and Barr accomplished novel and excellent results, they did so by the application of old means to analogous uses. The decree is affirmed, with costs.

### On Rehearing.

On January 22, 1908, we filed a decision affirming the decree of the Circuit Court for the Southern District of New York dismissing the bill founded upon letters patent No. 500,149 to Daniel E. Moran and letters patent No. 514,843 to William C. Barr. On February 3, 1908, the complainant—appellant—filed a petition for a reargument upon two points, viz.:

"(1) That claim 2 of Moran's patent is entitled to cover closure of a naked valve against the naked rope without the intervening 'stuffing box or packing on the valve' or 'stuffing box on the rope' which this court has read into it (see court's analysis of claim 2).

"(2) That said naked closure involves invention."

On February 11th we granted the petition for a rehearing confining it strictly to the two propositions as stated, supra. In our former decision we said:

"The subject of the controversy is an air lock in combination with a caisson used in construction work at levels beneath the water line, such combination having been long in use. The caisson sinks as excavation continues, the water being kept out by compressed air constantly pumped into the caisson. If the empty bucket were carried directly into the caisson or the full bucket out of it, the compressed air would rapidly escape and for this reason an intermediate lock or chamber between the caisson and the open air has always been used. Devices whereby pressure in the working chamber could be cut off from the lock, such as a door between the two were familiar. If the bucket were coming from the outer air the door between the lock and the working chamber was closed, the air in the lock was equalized with the atmosphere, the bucket was then introduced in the lock, the air in the lock equalized with that in the caisson, the door between them opened and the bucket lowered into the working chamber and vice versa when the loaded bucket was coming out. This always involved two separate hoists, one from the caisson into the lock and another from the lock into the open air and vice versa. Moran's was the first lock which permitted the continuous and uninterrupted hoist from the caisson into the upper air and descent from the upper air into the caisson. He accomplished it by passing the hoisting fall through a hole in the center of a two-part gate or valve separating the air lock from the outer air with a device to prevent the undue escape of the compressed air. It was an undoubted improvement and as such has been generally adopted."

Claim 2 is as follows:

"The combination in an air lock of a two-part valve with a rope opening at the center with a seat on the inner side of the air lock and the rope at the center against which the valve closes substantially as specified."

We construed the claim as containing the following elements: (a) Two-part valve; (b) opening for rope or center of valve; (c) valve seat on inner side of air lock; (d) rope against which valve closed ei-

ther by means of a stuffing box or packing on the valve or by means of a stuffing box on the rope. It will be observed that the words "either by means of a stuffing box or packing on the valve or by means of a stuffing box on the rope" are not in the claim.

COXE, Circuit Judge. The patent to Moran is for an improvement in air locks for use in work carried on under air pressure greater than that of the atmosphere, known as the pneumatic method. The invention "consists in the combination in an air lock of a valve adapted to close around and open from a rope at or near the center of the valve while the rope is bearing a load." The specification states that prior to the invention it was customary in the construction of underground or underwater works to connect the working chamber with the outer air by a tube or shaft through which access is had to and from the working chamber. For this purpose the air lock was provided with pipes and valves to equalize the pressure in the air chamber with that in the working chamber or with the outer air. In passing material from the working chamber to the outer air it was necessary, when using the old devices, to close the outer door, open the inner door, move the material into the lock and rest it there. The inner door was then closed, the pressure equalized with the outer air and the material hoisted out of the way. This method, when tackle was used, required one tackle to bring the material into the air lock and another to move it from there to the outer air. The purpose of the invention is to do all this in one continuous journey without special appliances, change of tackle or intermediate handling.

No one can read this patent without being impressed with the fact that the inventor is an accomplished engineer thoroughly conversant with the art and impressed with the importance of the difficulties which confronted him. It was no ordinary problem which he undertook to solve. He had to deal with the tremendous force of compressed air in its relation to a continuous passage of the bucket through the lock. The old air locks, hoisting falls and single gates were useless here. Nothing which had been produced before could be utilized to subdue and hold in check the persistent pressure of the air while the journey through the lock was taking place. The lock of the patent in its most minute details was constructed to meet and overcome this difficulty and to treat the problem as one of ordinary mechanics does injustice to the inventor.

Previous to Moran's invention no one had ever taken material through the lock by a continuous hoist. The defendants' expert says:

"No instance has come to my knowledge where material was hoisted straight through prior to the date of the Moran patent."

The idea of doing this was a bold and brilliant one and was at first deemed chimerical and impossible by hydraulic engineering. When, however, it became an accomplished fact, it made a decided sensation among contractors, engineers and builders, and was hailed as "a flash of genius." The Moran locks were at once adopted and are now in general use.

To assert that Moran's invention is anticipated by freight elevators which passed through several stories of a building, the openings on

each floor being closed by two-part doors, is tantamount to asserting that he who solves the problem of aerial navigation will be entitled to no credit because similar vehicles with the same motive power have traveled successfully over the land and through the water.

The Kennedy and Scott patent for a blast furnace top seems principally to be relied on, but we are of the opinion that it belongs to a different art, and we fail to see how it imparted any useful information which was not known to all familiar with the old air locks.

Bearing in mind that Moran's invention relates solely to an air lock so constructed that material can be hoisted "straight through" it, and confining it to this feature alone, it may be said truly that there was no prior art. No one had ever done this before, although the necessity for such action was generally recognized. Moran's idea was new and brilliant, and he carried it out by constructing a new air lock bringing together elements, several of which were old, but which were never combined before. In other words, the combination was new and produced a new and highly useful result. To do this, we think, involved invention.

The principal question in such cases is: Has the patentee added anything of value to the sum of human knowledge, has he made the world's work easier, cheaper and safer, would the return to the prior art be a retrogression? When the court has answered this question, or these questions, in the affirmative, the effort should be to give the inventor the just reward of the contribution he has made. The effort should increase in proportion as the contribution is valuable. Where the court has to deal with a device which has achieved undisputed success and accomplishes a result never attained before, which is new, useful and in large demand, it is generally safe to conclude that the man who made it is an inventor. The court may resort to strict and, it may even be, to harsh construction when the patentee has done nothing more than make a trivial improvement upon a well known structure which produces no new result; but it should be correspondingly liberal when convinced that the patentee's improvement is so radical as to put the old methods out of action. The courts have frequently held that one who takes an old machine and by a few, even inconsequential, changes compels it to perform a new function and do important work which no one before ever dreamed it capable of performing, is entitled to rank as an inventor.

In Hobbs v. Beach, 180 U. S. 383, 392, 21 Sup. Ct. 409, 413, 45 L. Ed. 586, the court says:

"It appears from the testimony that several of these addressing machines, of which that of Dennis and York is a type, and which are now claimed to have inspired the Beach patent, had been upon the market for many years and yet it never seemed to have occurred to any one engaged in the manufacture of paper boxes that they could be made available for the purpose of attaching strips to the corners of such boxes. This very fact is evidence that the man who discovered the possibility of their adaption to this new use was gifted with the prescience of an inventor. While none of the elements of the Beach patent—taken separately or perhaps even in a somewhat similar combination—was new, their adaption to this new use and the minor changes required for that purpose resulted in the establishment of practically a new industry, and was a decided step in advance of any that had theretofore been made."

This language is descriptive of the old hoists, elevators and hatch-ways prior to Moran and may be applied to his achievement with even greater emphasis because Beach had no such force as compressed air with which to contend.

In Magowan v. N. Y. Belting Company, 141 U. S. 332, 12 Sup. Ct. 71, 35 L. Ed. 781, invention was found in placing a rubber back upon the packing for stuffing boxes.

In the Barbed Wire Case, 143 U. S. 275, 12 Sup. Ct. 443, 36 L. Ed. 154, the court decided that the substitution of a wire barb for one cut from an iron plate involved invention.

In Potts & Co. v. Creager, 155 U. S. 597, 15 Sup. Ct. 194, 39 L. Ed. 275, the court held that one who improves an old device so that it is adapted to a different industry, "may draw to himself the quality of an inventor."

In Loom Co. v. Higgins, 105 U. S. 580, 591, 26 L. Ed. 1177, the court says:

"It may be laid down as a general rule, though perhaps not an invariable one, that if a new combination and arrangement of known elements produce a new and beneficial result, never attained before, it is evidence of invention. It certainly was a new and useful result to make a loom produce 50 yards a day when it never before had produced more than 40."

The keynote of all the decisions is the extent of the benefit conferred upon mankind. Where the court has determined that this benefit is valuable and extensive it will, we think, be difficult to find a well considered case where the patent has been overthrown on the ground of nonpatentability. The so-called 1901 locks, which are alone in controversy, did not have packing or a stuffing box on the rope. Arthur McMullen, one of the defendants, testified that "instead of a stuffing box there had been a bushing put in for the rope to go through. It was an ordinary bushing, it may have been brass and it may have been steel. Its function was to keep the rope from wearing into the doors. Practically the same purpose was subserved by the bushing as by the stuffing box."

Upon reflection we are convinced that we improperly limited the second claim by reading into it the words "either by means of a stuffing box or packing on the valve or by means of a stuffing box on the rope." The claim itself is entirely free from such limitation. In fact, its language negatives such a construction for it describes the rope in the opening at the center of the two-part valve against which rope the valve closes. The argument of the defendants seems to be that the claim, although no language therein supports such a contention, must be limited to some kind of packing. The reasoning is as follows—the claim says that the valve closes against the rope; it cannot close without packing; therefore the presence of packing must be inferred. To the mind of the writer it seems that the direct converse of this proposition is true, i. e., that the valve cannot close against the rope if packing intervenes. Significance must be given to the fact that "a stuffing box to close the central opening" is an element of the third claim, and if we read "a stuffing box" into the second claim the two claims are substantially alike. Such a construction should be avoided unless imperatively necessary. Bresnahan v. Tripp Giant-Co., 102 Fed. 899, 43

C. C. A. 48; Thomson-Houston Co. v. Nassau Electric Co. (C. C.) 110 Fed. 647.

It is conclusively demonstrated that when the valve is made to close tightly against the rope no packing is necessary. Why should the inventor, who has unquestionably covered such a construction in the second claim, be deprived of the fruits of his invention when practiced in its simplest and most convenient manner? That the inventor contemplated the use of the unpacked opening is deducible from the language of the claim, if it does not cover such a combination it is a meaningless excrescence. There is nothing in the description or drawings to indicate that the inventor did not intend to claim such a combination, indeed, the contrary is true.

There can be no dispute that figure 2 of the drawings shows the rope bearing directly on the metal sides of the valve hole without stuffing box or packing of any kind. Apparently figures 9 and 10 show the same thing and figures 11 and 12 show a hole through the valve without packing of any kind. Figure 12 shows a single piece upper valve with a slot cut from the periphery to the hole in the center to permit the introduction of the rope into the hole which, as stated, has no packing around it. We are unable to see how this valve could be operated in connection with a stuffing box on the rope. Any doubt as to this drawing showing a naked rope passing through a naked hole is solved by the language of the specification which says:

"The slot is provided with a slide to close the slot, so as to leave passage only for the rope or cable."

Again the patentee, speaking of the two-part valve, says:

"The opening N is made to conform to the rope or cable which is to pass through it. About the hole N I may arrange a stuffing box," etc.

In describing the operation of the lock he says:

"The bucket is lowered into the air lock and the upper valve, K, K', closed, so as to encircle the rope or cable and make a close joint at the meeting edges."

Without quoting further from the specification we think it may fairly be construed to mean that the inventor contemplated a closing of the valve against the rope, this was his preferred construction and he hoped that it would at all times prove sufficient. But it might not; wear and tear, or other causes, might prevent the valve from closing on the rope with sufficient tightness, and so he provided a remedy which the operator may use, viz., the stuffing box and packing. "May" does not mean "must."

The defendants' expert, Mr. Waterman, is apparently in accord with this construction, for he says, after describing the Moran patent:

"The specification also says that lips or flanges are made on the edges to give a more perfect joint as regards holding the air pressure, and also that a stuffing box in two halves may be employed, or flexible packing arranged in some other way, so as to make a close joint with the cable, such construction, however, not being described as compulsory (specification, page 2, lines 112 et seq.)."

Counsel for the defendant say:

"There is not a word in the specifications indicating that packing is absent in the locks of Fig. 2, or Fig. 9, or Fig. 10, or Fig. 11, or Fig. 12."

We think, as we have just seen, that there is very much to indicate the absence of packing. But, assuming the statement to be correct, the contrary is also true, there is not a word indicating that packing is present. We have, then, a universally recognized improvement in a different and dangerous art, we have a claim which concededly makes no reference to packing of any kind and we have a description and drawings which, let us assume, leave the presence or absence of packing in doubt. Why should the doubt be resolved against the inventor, why should the court be astute to destroy the claim by construction when it can be sustained by giving to its words their plain and logical meaning?

Counsel contends further that the joint at the rope opening of the second claim must be air-tight, not relatively or sufficiently air-tight, but absolutely air-tight. This contention is based upon the language of the claim—"the rope at the center against which the valve closes." It is said if the valve closes against the rope an air-tight joint must result and such a joint can only be produced by packing. This, we think, is a nonsequitur, neither justified by the language used nor supported by the description. To one unskilled in the technicalities of the art it seems manifest that a stuffing box or packing could not be used where the valve closes against the rope. In describing the lower valve Moran says:

"On the upper surface of the valve, W, between it and the seat, V, I may arrange a gasket of rubber or other material."

This language clearly indicates that this valve may close against its iron seat or may have rubber interposed to make it more air-tight. No packing is suggested for the upper valve, and, indeed, it could not be used in the construction shown in figure 9, for the sliding doors would rub it off. "The upper valve fits against a continuous circular valve-seat, B." If, then, naked iron contacting with naked iron around the entire inner surface of the lock can make a sufficiently air-tight joint, why should it have been thought incredible that steel and iron contacting in the comparatively negligible rope opening should make an operative joint? The construction contended for, if consistently carried out, would require us to read packing into the claim on every part against which the valve closes. This, as we have seen, is, as to the upper seat at least, impossible.

Moran must have known that absolute air-tightness was not attainable in such a large and rough structure as his air lock and that a small escape of air did not destroy its efficiency He knew or, at least, he may have known, that the slight leakage between the wall of the center opening and a tightly fitting steel cable would be negligible. He arranged his lock, even to the most minute details, with all this in mind. He evidently intended to provide for all contingencies, including a rope opening initially too large and also one made too large by the wear on the rope and valve. He therefore provided a stuffing box and packing for use whenever excessive leakage made their use necessary.

As the counsel for the defendants says in his original brief:

"Any intelligent mechanic would know enough to use packing to make an air-tight joint between two metal surfaces, if the joint were not tight enough

without it. * * * It does not appear that any one who ever built an air lock was so deficient in common sense as to * * * omit packing where packing was desirable."

And he might have added, with equal truth, "or to put packing in where it was undesirable." Because Moran endeavored to provide against emergencies he should not be deprived of the fruits of his invention when practiced in its most simple and obvious form. The novel feature is not the rope, or the rope opening, or the two-part valve, or the valve seat; but it is the combination of all of these elements which produced a new air lock doing what no other air lock ever accomplished before.

That the 1901 locks infringe the second claim if unrestricted by the limitations placed upon it in our former decision, is too obvious to require discussion.

The contention that these locks cannot be considered because infringement as to them is not pleaded is properly disposed of by the judge of the Circuit Court, and we agree with him in what he says regarding it. The argument rests upon the omission to aver in the bill that infringement occurred "at New York City in the Southern district of New York and elsewhere"—the words "and elsewhere" being omitted. But the defendants denied that they had infringed "at New York City or elsewhere," and the case was tried in all respects as if the question were properly presented by the pleadings. It would be a hardship to all concerned to subject them to the expense and annoyance of a new action when the addition of the two words "and elsewhere," will make the bill criticism proof.

We do not understand that the defendants Deeves are in any way connected with the 1901 locks.

The decree is reversed without costs in this court to the complainant but with costs in this court to the defendants Deeves on both patents and with costs to the defendant McMullen on the Barr patent alone. The cause is remanded to the Circuit Court with instructions to enter the usual decree, based upon the second claim of the Moran patent, against the defendant McMullen without costs and to dismiss the bill, with costs as to all the other defendants.