BONSALL v. T. B. PEDDIE & CO. SAME v. AMERICAN SPECIALTY CO. SAME v. STRAUSS et al.

(Circuit Court, S. D. New York. May 29, 1908.)

1. PATENTS—VALIDITY AND INFRINGEMENT—WARDROBE TRUNK.

The Bonsall patent, No. 604,346, claim 3, for a trunk adapted for hanging therein ladies' dress skirts and other garments so they may be carried without crushing, discloses novelty and patentable invention, and is of a pioneer character. Claims 4 and 5, for hanger frames for garments, are void for lack of patentable invention, in view of the prior art. Claim 3, also, held infringed.

2. SAME—RECEPTACLE FOR CLOTHING.

The Bonsall patent, No. 642,075, for improvements in receptacles for garments consisting of frames and hangers, claims 3 and 4, are void for lack of invention. Claim 5, which covers a device by which the suspended garments are made to incline inwardly and press together, in view of the novelty and utility of such device and its commercial success, must be conceded patentable invention and given a liberal construction as a pioneer. As so construed, held infringed.

In Equity.  Suits to restrain alleged infringement of certain United States letters patent and for an accounting.

H. S. Mackaye, for complainant.

Dickerson, Brown & Ragener, for defendants.

RAY, District Judge.  As defendant T. B. Peddie & Co. makes and sells the alleged infringing devices, and the defendants in the other cases merely sell such devices so made by T. B. Peddie & Co., and as all defend by same counsel, it was courteously agreed that evidence should be taken in one case only, read and used in all three, and that there shall be but one bill of costs.

Complainant charges infringement of claims 3, 4, and 5 of United States letters patent No. 604,346, dated May 17, 1898, to Seymour W. Bonsall for "dress skirt and wardrobe trunk," and claims 3, 4, and 5 of United States letters patent No. 642,075, dated January 30, 1900, to Seymour W. Bonsall for "receptacle for clothing." The claims in issue of the first patent mentioned read as follows:

"3. In a trunk, a slide adapted to move forward when the trunk is on one end, a prop at the forward end of said slide, and a cover-flap hinged to said trunk at one end and adapted when open to afford a bearing for the lower extremity of said prop.

"4. A hanger-frame adapted to slide back and forth, said hanger-frame comprising bearing sides and intermediate supporting-bars, in combination with hangers adapted to slide on said supporting-bars.

"5. A hanger-frame adapted to slide back and forth, said hanger-frame comprising bearing sides and intermediate supporting-bars, in combination with hangers adapted to slide on said supporting-bars and a prop for said frame attached to its outer end."

It will be noticed that claim 3 of this patent is for a combination of elements in a trunk, while the combination of elements in claims 4 and 5 have no reference to a trunk whatever.  As to claims 4 and 5 it says:

"One portion of my device, namely, hanger, is useful as well in a fixed closet or wardrobe as in a trunk, and I have claimed same aside from a trunk in the claims hereof."

As to his invention he says that it relates to an improved device in which ladies' dress skirts and other garments can safely be carried without crushing or disturbing the folds in which it is desired they should remain; that his device is especially adapted to the needs of traveling salesmen, importing dressmakers, and ladies who wish to visit health or pleasure resorts with an extensive wardrobe, and those persons who desire economy of room and easy access to their suspended clothing.  As shown, the lid of the trunk is made in two parts, and when the trunk is set on end and opened one part of the lid lies flat upon the floor, and the other portion of the lid is thrown back upon the upper end of the trunk.  Close to one end of the trunk, and upon each of two opposite sides, are placed or attached two guides running from the bottom or back of the trunk to the top or front thereof.  On these guides is suspended a frame or sliding rack, so that this rack may run easily back and forth when the trunk stands on end and is open.  The outer or upper end of this sliding rack has two

cross-pieces, extending from front to rear when standing on end,. which cross-pieces support the hangers. These hangers are for supporting the clothing and may be of any desired form and material. This sliding rack has a cross-bar, which supports the two cross-pieces. mentioned, and against this cross-bar the flap or top of the trunk, when closed, rests so as to hold the sliding rack firmly in position. To this cross-bar are attached two props or legs, connected near their lower ends by a brace which holds them parallel to each other, and these props or legs rest upon that part of the top or lid of the trunk lying upon the floor, so that when the trunk is placed on end and opened, and the sliding rack or frame, with the suspended clothing, is drawn out, such clothing is protected thereby from coming in contact with the floor. The trunk may be turned, also, on the carpet or floor, and the clothing is always protected as the trunk lids, sliding frames, props or legs, and suspended clothing all move in unison.

The operation of this trunk is substantially as follows: The trunk is set on end and opened. The sliding rack is then drawn out, with its hangers suspended or resting upon the cross-pieces. The clothing is then attached to suitable hangers and hitched upon the hangers extending from cross-piece to cross-piece. As the garment is suspended in this way, it may be pressed or slid back toward the bottom of the trunk. Garment after garment is suspended in the same way, and enough may be suspended to entirely fill the trunk. Of course, a lesser number may be suspended. This operation of filling the trunk with suspended garments being complete, the sliding frame is pushed back into the trunk, carrying the clothing with it. The lids or flaps are now closed and the trunk locked. If it is desired to make sure that the suspended clothing will not shake or flop about, a strap or cord may be tied around the entire body of clothing. When the trunk is wholly or partially filled in this way, it may be turned down on its bottom, or turned bottom side upwards, and the clothing will keep in position during transportation. On arriving at her destination the owner sets the trunk on end in his or her room, unlocks or opens the same, pulls out the sliding frame or rack, loosens the cords, if used, and finds the clothing properly suspended on the hangers as in a closet or room. By sliding the different hangers the different garments are supported a little distance apart, and any one may be taken out for use without disturbing the others, and the rack or frame may then be shoved back into the trunk, or the rack may be left pulled out. So one of the garments may be replaced without disturbing the others. I do not see why this trunk, containing this device, may not be used by a gentleman for his clothing, as well as by a lady for hers.

I have carefully examined the prior art, but find nothing that anticipates this. We have a trunk containing a bed and drawers or apartments to contain clothing, and this bed in two parts may be drawn out; the end of the framework resting on legs or supports. However, this is not a device for suspending clothing. So we have a trunk with drawers for containing clothing, but this is not the device in question. We have clothes driers with sliding racks, upon which clothing may be suspended. We also find in patent to Barnes, No. 546,647, of September 24, 1895, "apparatus for holding drawings,"

a sliding framework with supports, with cross-bars and hangers for suspending and holding drawings. This apparatus is somewhat suggestive of the device in question, but quite different. I regard this combination of the complainant in a trunk as a new and useful and novel and patentable invention. He seems to have been a pioneer, and is deserving of credit and protection as an inventor. I think that claim 3 of this patent is valid, and infringed by the defendants and each of them.

As to claims 4 and 5 I do not think they disclose patentable invention. These claims are very broad, and would include every combination hanger frame having the following elements: (1) Bearing sides and (2) intermediate supporting bars, with (3) hangers adapted to slide on the supporting bars, and (4) a prop for the frame attached to the outer end. Claim 4 omits the prop; that is, claim 4 includes a hanger frame such as is shown in patent to Shannon, No. 380,949, of April 10, 1888. That hanger frame has bearing sides, is adapted to slide back and forth, and has supporting bars; and it has hangers, but of a different description. But the sliding hangers of Bonsall are not so connected as to form an integral part of the frame. Any hanger that will slide on a bar or rod will do. In Barnes, No. 546,-617, of September 24, 1895, we have very clearly a hanger, with bearing sides, adapted to slide back and forth, and intermediate supporting bars. He also shows hangers or holding devices. Hangers to which we attach the clothing are of various forms, and may be hung on a nail, a hook, or a bar, and will slide thereon. Barnes shows a prop or props. Singer, No. 235,032, of November, 1880, shows a sliding frame, in a trunk, having bearing sides. A mattress is supported thereon, and this frame has props. Such or similar sliding frames, with or without props or legs, and having bearing sides, and adapted to slide back and forth, are so numerous and common that I cannot discover patentable invention in the combinations of claims 4 and 5.

Defendant says he does not infringe claim 3, because Peddie's prop or leg is not at the forward end of the slide and is not fastened permanently to the outer extremity of the rack. I think Bonsall a pioneer to such an extent that infringement cannot be avoided by changing the location of the leg or prop, or the mode of connecting it with the sliding frame, or by removing it altogether. Infringement is not avoided by changing the location of an element of the combination, unless you change the mode of operation or secure far better results.

Coming to patent No. 642,075, it is evidently an improvement on the patent already considered. In a receptacle for garments, trunk, closet, or the like, in claim 3 we have (1) a pair of substantially horizontal rods; (2) a frame depending therefrom; and (3) two sockets attached to the sides of said frame, said sockets being adapted to slide on said rods and to grip the latter when the bottom portion of said frame is pressed forward. In claim 4 we have (1) a sliding rack having side rods and (2) a confining frame sliding on said rods and adapted to serve as a support for said rack when the latter is drawn out. In claim 5 there is (1) a sliding rack having side rods; (2) a

confining frame; and (3) sockets on said frame adapted to slide on said rods—said frame being hung so as to incline inward when un-confined, and said sockets acting to grip said rods when the lower part of said frame is pressed outward.

In claim 3 of this patent I see no possible patentable combination. Two horizontal rods; a frame depending therefrom; two sockets attached to the sides of the frame. Rods, frames, and sockets are old, and a frame depending from one, two, or more rods is no novelty. But the sockets slide on the rods. I take it that such sockets so adapt ed and used are no novelty. But the sockets are so constructed or adapted that they grip the rods when the bottom part of the frame to which they are attached is pressed forward. What is new or novel in this? A socket is "an opening or cavity into which anything is fitted; any hollow thing or place which receives and holds something else." See Century Dictionary. Put two sockets on a frame, one on each side, run a rod smaller than the socket through each, and the adaptation is perfect, and the sockets will slide on the rods. But they are to grip the rod when the bottom of the frame is pressed forward. Take the frame with sockets attached to the rods in the manner just mentioned, and, if the sockets are only sufficiently large to allow them to slide easily on the rods, press the bottom of the frame for-ward and see what will happen. In every instance the sockets will grip or bind on the rods and prevent sliding. To prevent the gripping or binding you must carry the frame substantially perpendicularly to the rods. This is common knowledge. Bonsall does not confine him-self to some particular form of socket. He says:

"It is to be understood that my invention covers every form of socket which will permit the retaining member [the frame] to slide along its rod, whether made of wire or otherwise."

Claim 3 is invalid. Claim 4 is so broad that it covers every sliding rack having side rods; that is, rods on its sides, and a confining frame sliding on such rods of such length that it will act as a sup-port to the rack when drawn out. Sliding racks are old. To add side rods is not invention. See Bovey, No. 190,409, of May, 1877. Sockets binding on rods is not an old idea. It is fully described in patent to Wood, No. 341,394, of May, 1886. As to sliding racks ar-ranged with hangers on rods so that one suspended garment may be taken out without disturbing the others, see Holzhalb, "clothes rack for wardrobes," No. 356,125, of January 18, 1887. I find no patentable invention in claim 4 of this patent, having in view the prior art. It is too broad in any event.

Claim 5 is invalid, unless there is patentable novelty or mental conception amounting to invention in so hanging the frame that it will "incline inward when unconfined; the sockets being adapted to grip the rods when the lower part of the frame is pressed outward." To hang the frame so it will incline inward when unconfined the patentee has two sockets on his frame if only one suspended bar is used as a confining frame, and four sockets, two at each rod, if the frame has two suspended bars united by a cross-piece. See Figs. 3 and 4. In order to have the suspended frame, whether of the one construction

or the other, incline inwardly—that is, towards and so as to press against the suspended clothing and act as a confining frame—the suspended frame has two sockets on each rod attached to the perpendicular bar or leg, one in its front and the other in its rear. One of these sockets at each rod is prolonged above the other, so that in fact it has a larger opening on the perpendicular line. The result is that the shorter, or, so to speak, smaller, socket takes the weight and pull of the suspended frame soonest, and as the frame is then suspended from one side the other side drops down, and the lower part of the frame tilts or inclines backward in obedience to the law of gravity. However, this backward swing of the frame is arrested by the other socket so soon as it comes in contact with the rod. In Fig. 4 Bonsall shows this inner and shortest socket made of wire, evidently, bent once and a half about the rod which passes through it. Made in this way this socket grips the rod. You would get the same result should you attach two ears to the suspended frame, one each side of the leg, with a hole in each ear above the leg, with one hole made longer up and down than the other. Such a structure, such sockets, would be within and covered by this patent, or this claim of the patent. On this subject the specifications of this patent No. 642,075 say:

"I prefer to use two rods, 4, and a retaining member carried by both, as shown; and I prefer, as shown, further, to utilize the outer support for the rack shown in my patent aforesaid as the retaining means. The retaining member itself preferably consists of two legs or side bars, 6, joined by appropriate cross-pieces, 7; but a retaining member, consisting of but a single bar, 6, and sliding upon a single rod, would be within my invention. At the top of each side bar or leg, 6, I provide a form of mounting whereby the legs are hung upon the parallel rods, 4, in a manner to permit of the legs sliding back and forth upon said rods 4. This mounting preferably takes the form shown in Fig. 4, wherein a wire socket is attached to the top of the leg, 6; said socket comprising two parts, 8 and 9, looped over the rod, 4. These parts may be made in one piece, or in two pieces, as desired. As shown in the drawings, two different shapes of bent wire are shown as employed for the socket, 8, 9; but it will be readily understood that many shapes may be given to these wires without departing from the spirit of my present invention. In my preferred form of socket the forward part, 9, is sufficiently prolonged above the other part, so that, as the legs, 6, hang naturally, the center of gravity may come under the bearing-point of the part, 8, without the loop of the part, 9, coming in contact with the top of the rod, 4. The part, 8, is placed nearest the rear of the trunk or wardrobe in which it is used, and the consequence is that the natural tendency of the legs, 6, as they hang free is to incline toward the rear of the trunk or wardrobe. I prefer to make any socket which I use in this connection, so that this natural inclination toward the rear is secured, although it is to be understood that this feature of my invention is not a vital one. It is to be understood that my invention covers every form of socket which will permit the retaining member to slide along its rod, whether made of wire or otherwise. In the form of socket shown the part, 9, serves merely to prevent the legs, 6, from being inclined too far back when used."

To my mind this mode of suspending a frame having two legs and a cross-bar, or only one leg, so that the lower part especially will tilt back, is neither new nor novel. I think it has been common knowledge, of which any intelligent court should take judicial notice, that a piece of timber, say two inches thick and one or two or more feet in length, when suspended on a rod by a socket attached to one side

only, will incline; that if suspended on such a rod by two sockets, one on each side of the timber, it will not incline, if both sockets are of the same size and in the same horizontal plane with reference to the timber, but will incline, if the one socket is higher up than the other from the end of the timber, or has the perpendicular opening larger than the other. The theory is that the clothing hung in the receptacle therefor and suspended on the hangers attached to the rods or resting thereon is held at the upper part near the rods by the hangers, but that the lower portion of such clothing, being unconfined, will hang loosely and have a tendency to press outwardly, but will not overcome the inclination or tilt of the suspended frame and the grip of the sockets, and that therefore this suspended retaining rack will keep the clothing pressed together until the pressure is released by human interference. I think the device will and does work well for the purpose intended.

If the trunk is only half filled with garments, and this frame is pushed along the rods against them, they will be securely held in position, accidents barred, until released by human agency. The device is new and useful as a receptacle for clothing. It is a device to aid in pressing and holding suspended garments together; its main function being to hold them together after being pressed together. As it has utility, and is a new combination, and has proven successful, I am not disposed to hold claim 5 of the second patent invalid. The Circuit Court of Appeals in this circuit has recently decided that the real test of invention is the extent of the benefit conferred on mankind. The Supreme Court of the United States has repeatedly held that there must be something more than utility, commercial success, large sales, etc.; that there must be the mental conception. However, commercial success, large sales, benefits conferred on the public, etc., are evidence of invention and in close or doubtful cases usually turn the scale. In O'Rourke Eng. Const. Co. v. McMullen, 160 Fed. 933, decided April 14, 1908, the Circuit Court of Appeals said:

"The keynote of all the decisions is the extent of the benefit conferred on mankind. Where the court has determined that this benefit is valuable and extensive, it will, we think, be difficult to find a well-considered case where the patent has been overthrown on the ground of nonpatentability."

Where economy of space is desired, it is valuable, and this is especially true in receptacles for clothing and garments. As I look at this combination of Bonsall found in claim 5 of patent No. 642,075, it is valuable, generally useful, and has been a commercial success. In putting up this combination in a receptacle for garments, so far as I can find, Bonsall was in a sense a pioneer. On the question of infringement he is to be treated accordingly. His was not what we may term a bold and brilliant conception; but in this line, this particular art, he has done what had not been done before. He was an improver on his own trunks and devices connected therewith, and, this claim having been recognized by the Patent Office, I do not think the patentee should be held to such a strict and limited construction as to confine him to the precise construction shown. In this view I think defendants infringe this claim.

There will be a decree for the complainant accordingly.