### ENGLANDER SPRING BED CO. v. TROUNSTINE et al.

(District Court, E. D. New York. March 6, 1924.)

1. **Patents ⬅️328—1,368,510, for combined knock-down sliding couch and bed, held valid but not infringed.**

   Patent to Kreuzkamp, No. 1,368,510, for a combined knock-down sliding couch and bed, *held* valid but not infringed, in view of the state of the prior art.

2. **Patents ⬅️26(2)—Combination of old elements to produce new result may represent invention.**

   Where no direct anticipation has been shown, that many, if not all, of the elements of plaintiff's patent are old to the art, does not furnish proof that there was no invention, as the combination of old elements to produce a new result in a different way may represent a high order of invention.

3. **Patents ⬅️160, 168(2)—Rule as to effect of argument made before Patent Office.**

   The argument made before the Patent Office cannot control or restrict the plain language in the claims finally allowed, but plaintiff cannot claim anything which the Patent Office rejected, and, if the patent bears on its face a particular construction, the argument made before the Patent Office may confirm that construction.

4. **Patents ⬅️178—Patent not a pioneer has limited range of equivalents.**

   Where a patent is not a pioneer patent, its range of equivalents is limited.

5. **Patents ⬅️226—Attempts to approximate plaintiff's patent without infringing it not favored.**

   Trying to see how near one can come to plaintiff's patent without infringing it is not looked upon with favor by the courts, but is not necessarily an infringement.

In Equity. Suit by the Englander Spring Bed Company against John Trounstine and others, copartners doing business as the Greenpoint Metallic Bed Company. Bill of complaint dismissed.

Weed & Gray, of New York City (Meier Steinbrink, of Brooklyn, N. Y., and C. A. Weed, of New York City, of counsel), for plaintiff.

Charles C. Gill, of New York City, for defendants.

CAMPBELL, District Judge. [1] This is a suit in equity originally brought by the plaintiff to restrain the alleged infringement by the defendants of the following patents issued by the United States Patent Office:

---

⬅️For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

No. 1,368,509, to August J. Kreuzkamp, assignor to Englander Spring Bed Company, dated February 15, 1921;

No. 1,368,510, to August J. Kreuzkamp, assignor to Englander Spring Bed Company, dated February 15, 1921; and

No. 1,418,382, to August J. Kreuzkamp, assignor to Englander Spring Bed Company, dated June 6, 1922; and for damages.

The defendants interposed the usual answer of invalidity and noninfringement.

At the commencement of the trial the plaintiff withdrew from the court's consideration patents No. 1,368,509 and No. 1,418,382, leaving only for consideration in the instant suit patent No. 1,368,510, for combined knock-down sliding couch and bed.

Plaintiff bases the instant suit on all of the claims of said patent No. 1,368,510, to wit, claims 1 to 5, which read as follows:

"1. A knock-down bed structure comprising a head and a foot and a pair of spring mattress sections, one a main section and the other a sliding section, both detachably supported by the head and foot, the sliding section through the medium of the main mattress section, the sliding section having shiftable movement relatively to the main section thereby to form a double bed.

"2. A knock-down bed structure comprising a head and a foot and a pair of spring mattress sections, one a main section and the other a sliding section, both detachably supported by the head and foot, the sliding section through the medium of the main mattress section, the sliding section having shiftable movement relatively to the main section thereby to form a double bed, and said sliding section also being detachable from said main section.

"3. A knock-down bed structure comprising a head and a foot and a pair of spring mattress sections, one a main section and the other a sliding section, both detachably supported by the head and foot, the sliding section through the medium of the main mattress section, the sliding section having shiftable movement relatively to the main section thereby to form a double bed, the sliding section having a pair of legs at its outer side and a pair of rollers at its inner side and the main section having a pair of tracks for the reception of said rollers.

"4. A knock-down bed structure comprising a head and a foot, and a pair of spring mattress sections, one a main section and the other a sliding section, both detachably supported by the head and foot, the sliding section through the medium of the main mattress section, the sliding section having shiftable movement relatively to the main section thereby to form a double bed, the sliding section having a pair of legs at its outer side and a pair of rollers at its inner side and the main section having a pair of tracks for the reception of said rollers and the main section having side bars between which and its fabric the fabric of the sliding section is located.

"5. A knock-down bed structure comprising a head and a foot and a main mattress section including a stretched fabric detachably supported by said head and foot, and a sliding section likewise including a stretched fabric and shiftable relatively to the fabric of the main section one under the other to form a single or a double bed and supported by the head and foot through the medium solely of the main section."

The defendants offered the following patents in evidence to show the prior state of the art:

United States patent No. 712,718, issued to Adrian De Piniec-Mallet, dated November 4, 1902, discloses an extensible bedstead or couch, and after stating generally the object of the invention, the patentee further states its object as follows:

"A further object of the invention is to provide an improved bed comprising a main section and a sliding or extensible section, each having a metallic

fabric rigid therewith, the structure being so organized that the metallic fabric of one section will slide transversely or crosswise between a side bar and the metallic fabric of the other section, whereby the two sections are nested, and the two fabrics are in such close relation that they are nearly level when extended, the distance between the two being sufficient to permit the proper sliding of one under the other without interfering with such movement, and such sections comprising when closed a single and when open a full-sized double bed.

"A further object of the invention is to provide an extension couch or couch bed which may be made of metal throughout, and thus enable each section to comprise a metallic fabric connected at each end to metallic end frames comprising mattress-supporting bars having the desired number of legs or feet, preferably formed as a part thereof, such end frames being connected by suitable metallic side bars so formed or located that the proper spring of the metallic fabric will not be interfered with and so that the fabric of the extensible section will slide between a side bar and the fabric of the main section, and thus bring such fabrics nearly level when the sections are extended."

No detachable head or foot is disclosed in this patent.

United States patent No. 667,916, issued to Eugene R. Leighton, assignor to the Merrimac Mattress Manufacturing Company, dated February 12, 1901, discloses a couch bed which in reality consists of two beds constructed in two sections one of which telescopes within the other. Each of these sections is capable of use by itself as the sliding frame may be disconnected from the main frame. No detachable head or foot is disclosed in this patent.

United States patent No. 859,463, issued to Andrew Gustave Salquist, dated July 9, 1907, discloses a bed lounge consisting of a base and two folding members properly upholstered with a detachable arm rest which may be extended to form a head or foot board of sufficient width for the structure when used for a bed. The arm rest is attached to the frame.

United States patent No. 1,027,007, issued to George F. Sisbower, assignor to New York Couch Bed Company, dated May 21, 1912, discloses an operating device in combination with two telescoping couch sections.

British patent No. 10,010, issued to Mary Ann Cunningham, dated May 21, 1895, discloses a bedstead with an additional frame underneath which can be extended when a double bed is required, and pushed under the bedstead when the extension is not in use. This is a trundle bed.

Swedish patent No. 9,162, issued to J. Andren, dated May 14, 1897, discloses a device for attaching end boards to spring mattresses in which the end boards are attached to and readily detachable from the mattress, but said end boards do not support the mattress.

Swiss patent No. 43,448, issued to August Ittensohn, dated March 23, 1908, discloses a demountable bedstead in which a head board and foot board are detachably mounted on a mattress frame which is supported on feet. The head board and foot board do not support the mattress frame.

Danish patent No. 13,785, issued to Karl Emil Julius Sorenson, dated October 6, 1910, discloses trimming to effect a juncture between a lounge or the like and two end pieces to form a bed. These end pieces are easily detachable, and when attached the bed is at the usual level.

French patent No. 379,096 issued to Jean Etienne Goutte, dated June 21, 1907, discloses a fastening made for assembling beds by which mattresses, whether box, open, or all metal, may be easily attached to or detached from metal or wooden bedstead end pieces, and the side walls connecting the end pieces are dispensed with. Unless the mattress section be mounted on casters, as shown in Fig. 3, the end pieces support the mattress.

United States patent No. 1,018,195, issued to John A. Kemmler, dated February 20, 1912, discloses a bed having a fixed frame with four corner posts and head and foot pieces which can be attached to or removed from sockets in the tops of the corner posts, the mattress being supported by the fixed corner posts.

United States patent No. 1,368,509, issued to August J. Kreuzkamp, assignor to Englander Spring Bed Company, the plaintiff, dated February 15, 1921, discloses a knock-down three-piece bed or couch bed consisting of a head, foot, and mattress section, the mattress section being detachably connected with the head and foot in an improved manner.

[2] These patents show that many, if not all, of the elements of the plaintiff's patent in suit are old to the art, but this does not furnish proof that there was no invention, because no direct anticipation has been shown and the combination of old elements to produce a new result in a different way may represent a high order of invention.

This invention is simple and economical and to me seems to possess novelty, as it has made possible the economizing of space in these days of small rooms and high rents, and by reason of its sanitary character, the ease with which the various parts can be assembled and the bed can be made to serve as a double or single bed, when required or made presentable in the day, it has overcome the many objections to the beds shown in the patents offered herein to show the prior state of the art.

The commercial success achieved by the bed shown in the plaintiff's patent in suit has been great, and it has occupied a commanding position on the market.

In my opinion the patentee in the plaintiff's patent in suit added something of value to the sum of human knowledge and made the world's work cheaper and easier by said patent, and it cannot be overthrown on the ground of nonpatentability. O'Rourke Engineering Const. Co. v. McMullen et al., 160 Fed. 933, 88 C. C. A. 115.

The claims of plaintiff's patent in suit are limited by the plain language used in each of them to a knock-down bed structure having a spring mattress structure detachably supported by the head and foot. This limitation further appears from an examination of the file wrapper of the patent in suit.

Originally the patentee filed 16 claims. All of these claims were rejected.

Claims 1, 2, 3, 9, 10, 11, and 12 were rejected on Hawley, No. 1,090,474, March 17, 1914, and the examiner said:

"In view of De Piniec-Mallet, 712,718, November 4, 1902. There is nothing in mounting Mallet between head and foot boards in Hawley's manner."

Claims 4, 5, 6, 7, 8, 13, 14, 15, and 16 were rejected as for an improper combination, and the examiner said:

"There is no essential cooperation between the specific manner of connecting the framework to the head and foot boards and the specific sort of bed borne by the framework. The combination of detachable head boards and foot boards with the frame work of an extensible bed is old in Hawley."

Reference also is made to:

Sisbower, No. 1,027,007, May 21, 1912.
Luppino, No. 898,981, September 15, 1908.
Cross, No. 574,717, January 5, 1897.
Danish, to Lohmann, September 14, 1908.

Thereafter some slight amendments were made to some of the claims and a new claim, No. 17, was added.

All 17 claims were rejected by the examiner.

Thereafter all the claims were canceled and 13 new claims were added by amendment.

Claims 1, 2, 3, 4, 5, 6, 7, and 12 were rejected for misjoinder of invention.

Claims 8, 9, 10, 11, and 13 were rejected on Hawley in view of Mallet, both of record.

The examiner said:

"The new claims do not appear to present anything not before considered and no new references seem to be required."

After reconsideration, a long argument having been filed, the examiner again rejected all of the claims.

An appeal was taken to the examiners in chief, and they made their decision affirming the decision of the examiner as to claims 1 to 7, inclusive, and claim 12, and reversed the examiner as to claims 8, 9, 10, 11, and 13, which last-mentioned after slight amendment became the five claims of the patent in suit.

In the brief filed by the attorney for the patentee on the said appeal he said:

"In the present improvement we have the sliding and main sections of the Mallet patent 712,718, the main section however not being provided with permanent feet as in that patent, but being suspended, as it were, from detachable or knock-down head and foot members, which are not present in the Mallet patent."

This argument prevailed, and from the decision of the examiners in chief it appears that the shortening of the legs of the mattress section of the old Mallet construction, which was a feature of the patent in suit, was considered as a reason for the allowance of the five claims, and the examiners in chief said:

"Then going to the Mallet construction, cutting off the lower ends of the four legs 6', 6''' of the main section A, and providing the retained portions of the legs with slots to engage the buttons 18, a construction would be theoretically produced responding to the terms of appealed claim 8. But we think the suggestion that parts of the Hawley and Mallet constructions could be associated in the manner called for by the claim does not come from either reference. Rather, it comes from the disclosure of the application on appeal. So far as the proposed combination of the Hawley and Mallet constructions to meet claim 8 is concerned, it is our view that the combination is not obvious and the claim should be allowed."

For the reasons stated in the consideration of claim 8, the examiners allowed claims 9, 10, 11, and 13.

Claims 8, 9, 10, 11, and 13 then became claims 1, 2, 3, 4, and 5, and the other claims were canceled and two additional claims, 6 and 7, were proposed by amendment.

The admission of the new claims, 6 and 7, was denied.

An appeal to the Commissioner resulted in an affirmance of the decision of the chief examiners.

The applicant then by amendment canceled the disallowed claims, and in each of claims 1, 2, 3, and 4 inserted after the word "foot" the words "the sliding section," and by changing the period to a comma at what is now page 3, line 25, of the patent in suit, and adding the words "while the unitary sliding section is supported by the head and foot through the ordinary main mattress section."

Under the heading of "Remarks," the applicant said:

"The slight amendment made to the claims is necessary to correct the obvious error in the language since the main section does not support itself, and the phraseology used is the same as that at the end of former claim 13, now 5. The amendment made to the specification is merely to use substantially the same language that is present in former claim 13."

It would thus appear that the patentee limited his invention by each claim to a knock-down bed structure comprising a head and foot and a pair of spring mattress sections, in which the main mattress section would not have permanent feet, but would be detachably supported by the head and foot, and this is my opinion constituted its novelty.

I do not believe that the patent could be sustained in view of the prior art, if it merely disclosed a head and foot detachably connected with the old Mallet bed; but in any event it seems clear from the language used by the patentee in his claims that he limited his invention as before stated, and it makes no difference whether he was required to so limit it or did it voluntarily. Royer v. Coupe, 146 U. S. 532, 13 Sup. Ct. 166, 36 L. Ed. 1073; Merrill v. Yeomans, 94 U. S. 568, 24 L. Ed. 235; Fulton v. Powers (C. C. A.) 263 Fed. 582.

Plaintiff properly contends that the claims as granted are not restricted by representations in the drawings or details pointed out in the specification of the patent, but in my opinion the claims are restricted by the plain language of the claims themselves.

[3] Of course, the argument made before the Patent Office could not control or restrict the plain language of the claims finally allowed (A. G. Spalding & Bros. v. John Wanamaker, 256 Fed. 530, 167 C. C. A. 602), but plaintiff cannot now claim anything which the Patent Office rejected (Van Epps v. United Box Board & Paper Co. [C. C.] 137 Fed. 418). If, however, the patent bears on its face a particular construction, the argument made before the Patent Office may confirm that construction. Goodyear Dental Vulcanite Co. v. Davis, 102 U. S. 227, 26 L. Ed. 149.

Plaintiff's prior patent No. 1,368,509, the application for which was copending with that for the patent in suit, does not in my opinion anticipate the patent in suit; but none of the novel features of that patent can again be relied upon to sustain the patent in suit, and it clearly ap-

pears that the means employed in attaching the detachable head and foot to the mattress section claimed in said prior patent cannot be considered in determining the novelty or invention of the patent in suit, nor are they claimed as invention in any of the claims of the said patent in suit.

Plaintiff devoted much time to comparing defendants' structures (Plaintiff's Exhibits 7A and 13A) with plaintiff's structure (Plaintiff's Exhibit 19), but in my opinion Plaintiff's Exhibit 19 is not an embodiment of the patent in suit even if the mattress section is detachably supported by the head and foot, and if infringement is to be shown it must be of the plaintiff's patent and not of its commercial structure.

The desire of the patentee in the patent in suit to have the patented structure appear more like an ordinary bed and less like a couch, and to reduce its weight, clearly appears in the patent in suit, and is best given in the words of the patentee:

"In short, the object of the present improvement is to provide a sliding couch bed which will have more the appearance of an ordinary bed and less of the appearance of the ordinary couch without, however, increasing the weight of the structure necessary to be handled by the user when it is desired to assemble the article."

This desire is not accomplished by the creation of Plaintiff's Exhibit 19 or the defendants' structures Plaintiff's Exhibits 13A and 7A, because in all of them the failure to reduce the length of the permanent feet of the mattress section causes the structure to have more the appearance of a couch than of an ordinary bed.

The fact that the permanent feet of the mattress section in the said structure (Plaintiff's Exhibit 19) do not support said section when the head and foot are attached, but that function is performed by said head and foot, does not make it possible to read thereon any claim of the patent in suit when you consider that the mattress section has permanent feet which under such condition are less than an inch above the bottom of the head and foot, because to so hold would be to determine that plaintiff's patent covered merely the Mallet bed or couch detachably supported by the head and foot, in which event it would appear to me to be void for anticipation.

Plaintiff claims that the permanent feet of the mattress section in the defendants' structures which support the detachable head and foot are the equivalents of the head and foot by which the mattress section is detachably supported in the patent in suit, but this does not seem to me to be true.

[4] The patent in suit is not a pioneer patent, and therefore the range of equivalents is limited.

Furthermore, the patentee having voluntarily limited his claims in the patent in suit, he cannot by the doctrine of equivalents stretch the patent so that it will read upon the old Mallet bed with detachable head and foot attached thereto and supported thereby, and yet that would be the result if we accepted the plaintiff's contention, notwithstanding the fact that it was against this that the Patent Office and the patentee limited the patent in suit.

Plaintiff's structure (Plaintiff's Exhibit 1A) is an embodiment of the plaintiff's patent in suit, and the head and foot perform a distinct func-

tion—that of supporting the mattress section which supports the sliding section—and this is properly described as a knock-down ·bed, because when the head and foot are detached the bed is knocked down and entirely disorganized, as the mattress section without permanent feet cannot serve as a complete bed minus head and foot.

Limited as I have hereinbefore described, the five claims of the patent in suit are valid.

[5] At the outset in considering the question of infringement, I am convinced from the evidence that the defendants in putting out their structure were trying to see how near they could come to the plaintiff's patent without infringing it, and this involves great danger and is not looked upon with favor by the courts. Calculagraph Co. v. Wilson (C. C.) 136 Fed. 196. This, however, will not justify a finding of infringement if it has been avoided.

The defendants' structure in effect consists of the old Mallet bed with detachable head and foot, but the head and foot do not perform the function of supporting the mattress section, as that is supported by its own permanent feet, and it supports the head and foot. In this respect the defendants' structure follows the prior art.

The defendants' structure is not a knock-down bed; on the contrary, the mattress section, resting on its permanent feet, is complete in itself, and the head and foot are attached and detached at will and do not function to support the mattress section.

Plaintiff makes much of the fact that the bottom of the head and foot when attached to the mattress section of the defendants' structure is but three-eighths of an inch above the bottom of the feet of the mattress section which supports the head and foot, while the bottom of the feet of the mattress section of the plaintiff's structure (Plaintiff's Exhibit 19) is but three-eighths of an inch above the bottom of the head and foot which support the same, and claims that the defendants merely rearrange parts and thereby infringe.

I have been unable to follow plaintiff's reasoning because, as I have hereinbefore said, I do not think that Plaintiff's Exhibit 19 is an embodiment of the patent in suit, and further because it seems to me that the function performed by the head and foot in plaintiff's patent in suit is entirely different from the function performed by the head and foot in the defendants' structure, and further that if the claims of the plaintiff's patent in suit would read on the defendants' structure, then the plaintiff's patent would be void for anticipation as shown by the prior art:

Swedish patent No. 9,162, Andren.
Swiss patent No. 43,448, Ittensohn.
United States patent No. 1,018,195, Kemmler.
United States patent No. 712,718, Mallet.
United States patent No. 667,916, Leighton, supra.

The patent in suit does not read on the defendants' structure because the defendants' structure is not a knock-down bed, and the mattress section is not detachably supported by the head and foot, and, as hereinbefore said, these were the chief novel features of the patent in suit.

I am unable to find any infringement because of the possible use of casters on defendants' structure, because there was no proof that they were ever used, and the exhibits did not show that they were so constructed as even to invite their use.

Whatever justification there may be for plaintiff's contention as to infringement by the defendants because of the fastenings used in attaching the head and foot to the mattress section, that question cannot be considered in the instant suit, as the claims of the patent in suit make no mention of the fastenings, and they are not covered by any of the claims, and the earlier patent in suit, No. 1,368,509, in which claims for such fastenings were made, was at the opening of the trial withdrawn from the consideration of the court.

In my opinion the defendants' structure does not infringe any of the claims of the plaintiff's patent in suit, and defendant is entitled to a decree dismissing the plaintiff's bill of complaint, with costs.

Settle decree on notice.